## No. 11,163.

### THE STATE EX REL. ROCCHI VS. JUDGE OF THE CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS.

1. Although this court alone is vested with general supervisory jurisdiction over inferior courts, every appellate court has power to issue writs of mandamus, prohibition and certiorari in aid of its appellate jurisdiction.

2. When a city court has refused a suspensive appeal applied for in a case appealable to the Civil District Court. the latter court is clothed with jurisdiction and power to issue writs of prohibition, mandamus and certiorari addressed to the former and to determine thereon whether or not it was the duty of the inferior court to grant the suspensive appeal, and, if finding that such was its duty, to enforce the performance.

3. In such a proceeding the judgment of the District Court is not appealable to this court, and, if the proceedings are regular, it is not subject to our control in the exercise of our supervisory jurisdiction under the rules which we have adopted and uniformly adhered to, and under which this court only examines questions affecting the *validity* of judgments and proceedings, and does not assume to correct mere *errors*.

A PPLICATION for Certiorari and Prohibition.

*Theo. Cotonio* for the Relator:

The docketing of a cause according to law is an essential prerequisite to all judicial proceedings; unless waived or ratified by parties who are capable of acquiescing in, and assenting to, an irregularity of that kind. 41 An. 1103, James vs. Meyer.

The Supreme Court has *exclusive* control and general supervision of all inferior courts, and it *alone* can issue to such courts the remedial writs mentioned in Art. 90 of the Constitution, whether the cases before the inferior courts are or not appealable. 39 An. 97, State ex rel. Hirsch vs. Judge; 37 An. 285, State ex rel. Gas Light Company vs. Judge; 32 An. 315, State ex rel. Sheehan vs. Judge; 33 An. 146, State ex rel. Fredricks vs. Judge.

A valid and legal decree of a City Court can not be arrested at the instance of the judgment debtor by an injunction from any other court. 30 An. 1228, Cobb vs. Richardson.

State ex rel. Rocchi vs. Judge.

So far as the object of a suit is to regulate the extent to which a judgment should be held entitled to receive execution, the court itself, which rendered the judgment, is the only one which can entertain jurisdiction of the action. 32 An. 1245, Davidson vs. New Orleans; 35 An. 1164, Troegel vs. Judge.

If the City Court had no jurisdiction a proper plea should have been filed therein. 29 An. 806, Larrieux vs. Judge; 34 An. 611, Attorney General vs. Judge.

A valid judgment of a City Court rendered in open court, and in presence of both plaintiff and defendant, becomes final upon action by the judge of the City Court overruling any motion for a new trial filed by the party cast. Act 129 of 1888.

*P. L. Fourchy* for the Respondent.

The opinion of the court was delivered by

FENNER, J. The facts, so far as it is necessary to state them, are that in a certain suit pending before a city court, and which was confessedly appealable to the Civil District Court, the cast defendant applied to the city court for a suspensive appeal; which the latter court denied on the ground that the delay allowed by law for a suspensive appeal had expired. Said defendant then applied to the Civil District Court, vested with appellate jurisdiction over the cause, for writs of mandamus, prohibition and certiorari in order to compel the granting of the suspensive appeal and to restrain the execution of the judgment. The respondents in that case filed sundry exceptions, none of which impugned the jurisdiction of the District Court, except the following: " that the said Civil District Court was without jurisdiction to grant the writs and relief prayed for, the First City Court never having divested itself of its jurisdiction in the suit of Rocchi vs. Denman and said Civil District Court not being vested with supervisory control over any inferior court; the exclusive control and supervisory jurisdiction over all inferior courts being vested by Art. 90 of the Constitution in the Supreme Court, and it alone can issue the writs prayed for." The other exceptions were merely corollaries of the above, or went to the merits of the proceeding.

The Civil District Court overruled the exceptions and granted the relief prayed for by the applicant for the writs.

Thereupon, the relator in this case, averring that in his action aforesaid the respondent judge had acted in violation of law and of petitioner's rights and had exceeded the bounds of his authority and jurisdiction, applies to this court for writs of certiorari and pro-

hibition and for a decree thereunder annulling his judgment and prohibiting its execution.

The respondent judge answers that his proceedings were regular and in the exercise of jurisdiction conferred on the Civil District Court by the Constitution and laws of the State.

The exception filed to the jurisdiction of the District Court has no merit. The writs were issued in aid of its undisputed appellate jurisdiction over the cause involved and under express authority of the law. C. P. 130, 838 to 843, 847 to 892, 877 and 878; State ex rel. Hirsch vs. Judge, 39 An. 97; State ex rel. Gas Light Co. vs. Judge, 37 An. 285.

We have already disposed of the precise question in a case appealable to the Circuit Court of Appeals where a similar application was made directly to the supervisory jurisdiction of this court, and we said: "It is apparent that under the provisions of Art. 104 of the Constitution, which vests the Circuit Courts of Appeal with the power to issue writs of mandamus, prohibition and certiorari in aid of their appellate jurisdiction, the Circuit Court of Appeals to which the case is appealable not only is competent, but is the only court having jurisdiction to hear and determine the question." State ex rel. Sample vs. Judge, 43 An. 936.

It being thus made clear that the respondent acted in the exercise and within the bounds of jurisdiction conferred by law, we can not consider the charges of error in his construction and application of the law without violating those conservative rules which we have laid down as governing the exercise of our supervisory jurisdiction and to which we have consistently adhered from the organization of the court under the Constitution of 1879.

In a late case this court used the following language, every word of which is applicable to the instant case:

" It is to be borne in mind that the proceeding now before us is not an *appeal*, and vests us with no *appellate* jurisdiction over the case, under which we may review questions merely affecting the *correctness* of the judgment. The application invokes the exercise of our *supervisory* jurisdiction exclusively, and in considering it we *must be guided and controlled by those rules and limitations which have been formulated and fixed by the laws of the State and the jurisdiction of this court*. To obtain the relief sought herein under the writs of certiorari and prohibition, these rules *imperatively* require that relator

shall establish one of three things, viz.: either (1) that the proceedings are infected with some *fatal irregularity* rendering them absolutely void, such as want of citation or refusal of a hearing, and the like; or (2) that the *jurisdiction* did not belong to the court which assumed it, but to a different court; or (3) that the cause is of a nature *jurisdiction* of which is denied to any court, because not within the limits of judiciary *power.*" State ex rel. Patton vs. Judge, 40 An. 394.

The above is but a summary of the doctrine which has been reiterated in so many cases that there is not a volume of the reports from 1880 to the present day which does not contain numbers of them.

We have, under all circumstances, firmly resisted the temptation to break down the distinction between our appellate and our supervisory jurisdiction obviously contemplated by the Constitution and always recognized by us. For if we are to correct mere errors, whether as to law or fact, committed by inferior courts in the exercise of undisputed jurisdiction, no reason would remain for the distinction made in the Constitution. Thus we said in another case: "Conceding *arguendo* that their order is a flagrant violation of law, an outrageous usurpation of authority, and works an irreparable injury to this relator, we are still met with the proposition that the judgment was rendered in the exercise of their uncontested appellate jurisdiction, and is therefore final. An attempt on our part to review their rulings under an application for prohibition would involve us in an attempt to assume appellate jurisdiction over that tribunal, a jurisdiction which is not conferred to us, and which we must decline to assume. To hold otherwise would enlarge the jurisdiction of this court so as to embrace every conceivable suit before every court, and nullify practically the article of the Constitution which defines our jurisdiction. * * * The powers vested in this court under its supervisory jurisdiction are of a very delicate nature; and we have repeatedly held that we would not exercise them so as to infringe upon the independence of inferior courts in the legitimate exercise of their jurisdiction." Brown vs. Ragland, 35 An. 838.

Out of innumerable cases to the same effect we cull the following: 32 An. 219, 549, 553, 1222; 33 An. 256, 378; 35 An. 1101, 1164; 36 An. 481; 37 An. 120; 38 An. 377, 921, 264; 40 An. 1, 393; 41 An. 577; 42 An. 1089, 1190; 43 An. 825, 380, 936, 1185, 1193.

Applying the above well settled principles to th's case we find:

1. There is no dispute that the case in which the respondent judge acted was one within the appellate jurisdiction of his court.

State ex rel Rocchi vs. Judge.

2. There can be no dispute that he had jurisdiction to entertain, hear and determine, applications for writs of mandamus and prohibition and *certiorari*, when invoked in aid of his appellate jurisdiction.

3. There is no serious contention that his proceedings were not faultlessly regular—the complaints made on that score being too frivolous to require mention.

Absolutely nothing else remains to support the present application except the charge that the judge's rulings upon questions of law submitted to him was erroneous. But the law confers upon us no appellate jurisdiction over the case, and therefore, we decline to review and correct mere errors however glaring.

Such action would be inconsistent with the very nature of the relief accorded under our supervisory jurisdiction and invoked in this very case, which is not to *amend, reverse* or *affirm* the judgment attacked, but to pronounce it *ab origine* null, void and of no effect. The judgment may have been erroneous, but being rendered on regular proceedings and in the exercise of jurisdiction conferred by law, it unquestionably possesses every element of an intrinsically valid judgment.

It is, therefore, ordered and decreed that the provisional orders herein issued be vacated, and that the writs applied for be denied.

McEnery, J., concurs and Breaux, J., concurs in the decree with separate reasons.

## CONCURRING OPINION.

BREAUX, J.    Briefly as possible, I will state the grounds upon which I rely in reaching a conclusion.

The judgment was pronounced originally in the presence of the attorneys of the respective parties to the suit.

A motion for a new trial was interposed, by the defendant, before the courts of original jurisdiction, and overruled in the absence of the counsel for the defendant.

If there was error on the part of the judge of Division B, it was in holding that notice of final judgment should have been given for the reason that the defendant was absent when the city court decreed that the decision was final by overruling the motion for a new trial.

At common law the writ of *certiorari* is an important and at times far-reaching remedy.

It is held, that unless the jurisdiction to issue the writ is expressly taken away, the superior may supervise and correct the acts of inferior courts, when the procedure is not according to the course of the common law.   Wait's Actions and Defences, Vol. 2, p. 134.

There are many decisions at common law holding that its appropriate office is to correct errors of inferior tribunals, without much regard to restrictions, and many good reasons are given why this writ should issue to correct errors of inferior tribunals, where there is no other remedy.

In the matter of that writ much can be said, either in favor of the liberal interpretation or in support of the close interpretation of the power.   The liberal is the natural tendency, particularly when there is no other available remedy to correct the error.

The close interpretation is supported by the principle that the independence of inferior tribunals must be safeguarded, and that they should not be lightly interfered with.

There is good authority in support of either construction; that in support of the liberal exercise of the supervisory control and that opposed and favoring a restricted exercisise of control and supervision.

In this case I have to determine by reference to the two.

Borrowing an illustration from another situation, combining difficulties of interpretation, it is deciding between a furious sea if you don't land and savage inhabitants if you do.

In the dilemma I have endeavored to follow the precedents laid down by this court.

In State ex rel. City of New Orleans vs. Judge, 33 An. 552, this court limited the power of supervision and control over inferior courts, not subject to the immediate appellate jurisdiction of this court, to cases of usurpation of power or of refusal to perform duty plainly imposed which they have no discretion to refuse.   In State ex rel. Chambers vs. Judge, 43 An. 826, it was held that certiorari issues to review the proceedings of inferior courts on the face of the papers and not to review the judgment as to its correctness.

In State ex rel. Matranga vs. Judge, 42 An. 1089, that the court having jurisdiction and the proceedings being regular certiorari should not issue.

In State ex rel. Brouilette vs. Coco, Judge, 45 An., it was held that the writ reaches illegalities rendering proceedings absolutely null

and void. In State vs. Perrault, 41 An. 179, for similar reasons the writ was refused; also in State ex rel. Polton, Register, vs. Houston Judge, 40 An. 393; State ex rel. Broussard vs. Justice of the Peace, 39 An. 778; 43 An. 178; 39 An. 776; 32 An. 1122; 42 An. 1120. In the case at bar the judgment became final when the motion for a new trial had been overruled.

Prior to the court's action on a motion for a new trial the judgment was incomplete. Carondelet Canal Navigation Company vs. City, 44 An. 394.

The special act 129 of 1886 reads: No appeal from a judgment shall stay execution unless taken three days *after final judgment;* if *it* (the final judgment) has been pronounced·in the presence of the parties, or within three days after notification; if it (the final judgment) has been rendered in the absence or in default of one of the parties.

The district judge held that the notice of judgment required applied to the *final judgment*—*i. e.,* the judgment made final by overruling the motion for new trial, at which ruling the defendant was absent.

The ruling does not call for the interposition of the writ of *certiorari.*

The district judge had jurisdiction of the question, and as defendant was not present when the final judgment was pronounced, he holds that he was entitled to notice.

The error, if there was error, is not great; the court did not transgress the bounds laid down by law, and for that reason I think the District Court's action should not be disturbed.

For these reasons I concur in the decree announced by Mr. Justice Fenner.

### DISSENTING OPINION.

NICHOLLS, C. J. The plaintiff alleges that on the 5th of July, 1892, in the suit of John Rocchi vs. Angelo Demma, he obtained judgment in the First City Court of New Orleans against the defendant, Demma, for the sum of $59, with 5 per cent. interest from April 30, 1891, and costs of suit. That this judgment was rendered in open court and in presence of defendant. · That subsequently defendant filed an application for a new trial, which application was regularly fixed for hearing for July 26, with the consent and

knowledge of defendant and his attorney, and being taken up according to assignment, the same was dismissed. That thereupon the judgment became final, and no appeal having been taken therefrom execution issued thereon, and under a writ of *fi. fa.*, which issued from the said First City Court, property belonging to the defendant was seized.

That subsequent to said seizure, on August 3, 1892, the defendant applied to the Civil District Court for the parish of Orleans for writs of prohibition and *certiorari*, to be directed against the plaintiff and the judge and constable of said First City Court, forbidding them from proceeding in said cause. That the application was allotted to Division "A" of the Civil District Court. That in obedience to the orders of court in said proceedings plaintiff and the said judge and constable appeared therein and excepted to the jurisdiction of the court and filed other exceptions, which exceptions were sustained and the application dismissed on the 29th of November, 1892, which judgment is now final. That on the 22d of December, 1892, long after the rendition of the said judgment of the Civil District Court, the defendant attempted to induce the judge of the First City Court to grant him a suspensive appeal from the judgment rendered on the 5th July, 1892, which he properly refused to grant, for the reason that the delay under which said defendant was entitled to an appeal had long since elapsed.

That on the 23d of December, 1892, the defendant again applied to the Civil District Court for writs of prohibition, certiorari and mandamus against plaintiff and the said judge and constable, forbidding them from further proceeding in the matter of the said action in the First City Court, and ordering the judge thereof to send up a certified copy of the proceedings in said suit and to grant the defendant a suspensive appeal from the judgment therein rendered.

That this second application was allotted to Division " D " of the Civil District Court.

That on the day fixed for the hearing of said second application plaintiff and the judge and constable aforementioned again excepted to the jurisdiction of said court and filed other exceptions, the *first* of which was to the effect that the said application was not properly docketed as required by law; the *second* that the said application was identical with and for the same cause of action as that filed by him and allotted to Division "A," and therefore the judgment on the

latter had acquired the force of the thing adjudged, as would appear by the record in that proceeding, annexed to and made part of the exception; the *third* that the Civil District Court was without jurisdiction to grant the writ and relief prayed for, the First City Court never having divested itself of its jurisdiction in said suit, and the Civil District Court not being vested with supervisory control over any inferior court—that the exclusive control and general supervision over all inferior courts being vested by Art. 90 of the Constitution in the Supreme Court, it alone can issue the writs prayed for in said application; the *fourth* ·'that the First City Court not having divested itself of its jurisdiction over the said suit, if execution has improperly issued or prematurely in the judgment by it rendered, or if any errors were made by the clerk or officers of said City Court in the execution of its judgment, the only court competent to arrest any such errors and to determine or regulate the extent to which its judgment should be held entitled to receive execution was on proper application to said City Court to set aside or quash the writ therein issued, and that no such application has ever been filed in said City Court, and no attempt has been made to quash the said execution;'' the *fifth* that the judgment rendered in said City Court was final on the day on which it acted on the rule for a new trial, to-wit: on *the 26th of July, 1892*, and the defendant would have been entitled to a suspensive appeal if he had made proper application and furnished sufficient bond within three days therefrom, and the effort of the defendant to appeal suspensively from the said judgment on the 22d of December, 1892, was of no effect, as the legal delays had long since elapsed, as would appear annexed from the record and proceedings in the suit in the First City Court, and made part of the exception.

That said exceptions were overruled improperly, and in violation of law and the rights of relator, the court made peremptory the writs issued on said application, and that in so doing, the judge of Division "D" exceeded his authority and jurisdiction; that no appeal lies from his decision, and that it is necessary that writs of prohibition and certiorari issue from this court, relator having no remedy by ordinary process of law.

Plaintiff prayed that a writ of certiorari issue commanding the judge of the Civil District Court, Division "D," to send to this court a certified copy of the record and all the proceedings in the matter of the said second application, so that their validity and

legality may be ascertained, and that a writ of prohibition issue prohibiting the said judge from further proceeding in any manner, shape or form in said matter until further order of this court, and that after due proceedings the writs of certiorari, prohibition and mandamus issued by the said judge be annulled.

The district judge has filed an answer in which he denies all the allegations contained in relator's petition, except such as he specially admitted. He admitted issuing and granting writs of certiorari, mandamus and prohibition in the matter of the second application referred to, entitled Demma vs. Judge First City Court, No. 37,612 of the docket of the Civil District Court. He avers that he issued the same in aid of his appellate jurisdiction as provided by the Constitution and laws of this State, and that all his acts and doings in the premises were strictly legal and regular, and he annexed as part of his answer the complete records in the suit No. 37,612 and also that of the suit No. 36,414 of the docket of the same court, being the first application for writs of certiorari and prohibition referred to by the relator.

The relator, Rocchi, instituted in the First City Court of New Orleans a suit against Angelo Demma for $59 with 5 per cent. per annum interest thereon from April 30, 1891, and costs. The defendant filed an answer, the case was regularly assigned and tried and judgment therein rendered in favor of plaintiff in the presence of the parties on the 5th of July, 1892. Under the *law* defendant had no right to a notification of the judgment so rendered. C. P. 1086. The defendant moved for a new trial; this motion was regularly assigned, tried and taken under advisement and finally disposed of adversely to mover, but in his absence.

He was not under the LAW by reason of that fact entitled to a notification of this ruling.

The judgment on the merits, which had been held up by this motion, became final on the day it was passed upon, and the delays both for a suspensive and a devolutive appeal commenced to run from that day. Three days from that date the defendant under the *law* lost the right of appealing suspensively from the judgment (C. P. 1139) and the plaintiff simultaneously acquired under the LAW the right of having execution issue under it (C. P. 1139) without let or hindrance from any appeal thereafter to be taken. "*No appeal*," says Art. 1131 (referring to such a case), "*shall stay execution.*"

Three days after the motion for a new trial had been rejected, if no motion for a suspensive appeal was made, the JURISDICTION OF THE FIRST CITY COURT *quoad* the EXECUTION OF THE JUDGMENT became as FIXED AND FINAL as its jurisdiction will become absolutely fixed and final at the end of twelve months for ALL purposes whatsoever. The same facts which also fixed the right of the court to proceed to the execution, conferred a present property right on the plaintiff which could not be affected except in the mode provided by law. Art. 548 of the Code of Practice is express to that effect.

If, therefore, the three days' delay mentioned ran in this case without any attempt to obtain a suspensive appeal, as is conceded on all sides as a fact, the First City Court had an *absolute right* and *inside of its jurisdiction* to issue a writ of *fi. fa.* on the application of the plaintiff, and if a writ issued, and under it a seizure of defendant's property was made, as is conceded on all sides, the plaintiff acquired a privilege upon the property of which he could not be divested except in the mode provided by law (C. P. 548).

ASSUMING the law as to the delay for a suspensive appeal to be as stated, and the prohibition of Art. 1131 against the staying under such circumstances of an execution by an appeal, to be in full force, it is perfectly clear that neither the First City Court nor the plaintiff, could be *legally* stopped in the execution of the judgment, and if so stopped the stoppage must have been brought about by the exercise of *power* and not of legal *right*.

I am of the opinion that under the conceded facts in this case the defendant lost under the *law* his right of suspensive appeal; that the plaintiff had the legal right to ask, and the First City Court the right, acting *in its clear jurisdiction, to issue* a writ of *fi. fa.* That the writ legally issued, property of defendant was legally seized under it, plaintiff acquired a legal privilege, and that the court and the plaintiff had the undoubted right to proceed to the sale of the property seized and to its legal application to the payment of relator's judgment.

Under such a condition of facts and law as is disclosed to us by the record, has this court the power, and if it has the power, should it exercise it in this case, in granting the relief asked for?

The respondent judge urges that we should not do so, for the reason that his actions were strictly regular and legal, and his decision rendered in aid of his appellate jurisdiction and in the exercise of power granted him by the Constitution.

That we have the legal power to correct the action (under Art. 90 of the Constitution) of the district judge if wrong, is unquestionable. The only question, therefore, is whether the occasion is one which calls for the application of that legal power.

It is claimed that this case being as to amount appealable to the Civil District Court, and that that court under Art. 135 of the Constitution having power to issue writs of mandamus, prohibition and certiorari, and having done so, the decision if wrong was merely "erroneous" and not "null," and must be "held to be" right, whether so or not.

The principle contended for is, that so far as questions of appeal are concerned in a case appealable in amount, the decisions of the District Court are absolutely conclusive and not reviewable, and this, independently of the nature and character of the questions raised and determined. That this was so before the Constitution of 1879 is true. This court had on that subject and prior to that time, no control over the District Court, no matter how clearly and palpably it was acting illegally and wrongfully; it was then the court of last resort, just as is now this court in certain matters, our own decrees being "held" to be right for want of a superior tribunal, even though possibly they may be wrong. The Constitution of 1879 designedly altered the situation and power of the two courts, and unless we abdicate our duty, we can not go back to granting the absolute power of final decision over all questions of appeal to the District Court, which it had before 1879.

That Demma had the right to apply to the District Court for writs of mandamus, certiorari and prohibition in the Rocchi case is unquestionable, as was the right of the court to grant the alternative writs which it did, to hear the parties and to decide on the issues presented, for until this was done the District Court was not in position to know what the rights involved in the controversy were; but in passing on the questions it had, so far as the question of its own power was concerned, to decide according to law. Had the question before the court been disputed questions of fact, either as touching what delays had run or not, or of law and fact touching the merits of the cause, it would have required a very exceptional situation to justify us, in our opinion, in interfering, if at all. But where the questions at issue were not of that character, but involved purely and simply questions of law touching the *measure of its own powers* and

*the limit of those of the First City Court,* a very different matter is before us.

It is perfectly obvious in ruling as he did the judge of Division D not only disposed of the particular case of Rocchi vs. Demma, but he announced a rule of action which was to govern in the future (so far as the First City Court was concerned and all suitors therein, *whose affairs might fall by allotment to that particular division*) all cases in the First City Court, a rule of action having, under my interpretation of the law, no foundation in law.

When the judge of Division D decided as a matter of law, that where a judgment between two parties is rendered in the First City Court in presence of the parties and the defendant being cast moves for a new trial, which is overruled in the absence of the mover, the defendant is entitled to a delay of three days for a suspensive appeal from a notification to him of the action of the court on the motion for a new trial, he decided directly against what I think to be the law, and subjects the First City Court and suitors in the First City Court to a rule of action and to conditions not fixed and enacted *by the law,* but by a decision of the judge of Division D of the Civil District Court, this " rule of action and conditions," contrary to the law, the district judge had no right to establish. We are dealing with no question of arbitrary action on his part; it is simply a question of power, as to which he was mistaken. If *power* was wanting, conscientious and honest convictions can not save the case.

If the judge of Division D could finally fix and determine a rule of action in this matter for his court, the judges of the other divisions of the same court and the judges of the different District Courts of the State would have an equal right to do so, and thus with a single law we would have the rights of citizens of different localities and in different jurisdictions, governed by different rules, according to mere chance and the varying opinions of judges.

One of the principal reasons for granting this court supervisory jurisdiction was to settle questions involving the power and jurisdiction of courts and to bring about uniformity of action among the different judicial tribunals of the State. We can imagine no more fitting case for the application of our power of control, for, independently of general grounds, a very great injury has been done to the relator personally. The effect of the action of the District Court in perpetuating the writs of prohibition and certiorari and making the

mandamus peremptory will be, if not corrected, to quash *immediately* and beyond remedy a privilege legally acquired under a writ of *fi. fa.* legally issued by a court acting within its undoubted jurisdiction. Were the appeal taken up under the action of the court, and the judgment of the court below on that appeal sustained, no issue would or could be raised on that appeal, as to the question of the suspensive character of the appeal, the issue having been one originating and determined subsequent to the judgment appealed from.

If the proposition be granted that the First City Court, under the facts of this case, had an absolute legal right to proceed with the execution of the Rocchi judgment, the unavoidable necessary consequence follows, that the Civil District Court had no legal authority to interfere with it; for to say that one court has absolute jurisdiction for a certain purpose, and that another court has at the same time jurisdiction to interfere with it, is as legally impossible as to say that two bodies can occupy the same space at the same time.

If such interference takes place, there must be wrong somewhere.

The error here is in the District Court in respect to its statutory jurisdiction in a class of cases of which the case at bar is one.

It will rot do for the district judge to say that because his court had as to amount appellate jurisdiction over this case, that his power over all matters connected with the appeal is absolute.

The Constitution has provided a judicial system, established different courts—defined the jurisdiction of each, and to a certain extent their mutual relations toward each other—it has also recognized and guaranteed certain rights as to judicial proceedings, and among other rights that of appeal; but on this last subject it has left open for legislative judgment and discretion the time, place, character and effect of the appeals, the laws as to which constitute a jurisdiction in the courts of a subordinate character—a statutory jurisdiction to which the courts are as bound to conform when the constitution itself is not transcended thereby, as they are to their constitutional jurisdiction.

There is no inconsistency between the right of appeal being open to Demma, and to his right being cut off under certain circumstances of preventing the execution of the judgment pending the appeal. The Legislature had the constitutional right to regulate that matter, and it has done so; it might have still further curtailed his right and that of the District Court over the subject matter had it thought proper to have done so. The Legislature has declared that this right

could only be exercised at certain times and under certain conditions, and has expressly declared that unless such conditions are complied with, no appeal shall stay the execution. The grant of power to the First City Court to proceed, is the limit of the measure of the Civil District Court to interfere; if that court passes the limit so affixed it exceeds *the bounds* of its jurisdiction on this particular point, though it may have jurisdiction over the subject matter in other respects, and prohibition lies both under Art. 90 of the Constitution and under Art. 845 of the Code of Practice.

But it is said we should not take action in the matter because the decision of the District Court, if wrong, was simply an "error of judgment." It was unquestionably an " error of judgment," but not one of such a character as that which is referred to in the general use of that term as applied to prohibition, certiorari and mandamus, and as not forming properly matters of correction through those remedies. The error here, is not in respect to the regularity of the proceedings or the facts of the case, but as to the power of the court; an error on that point we think it is our duty to rectify.

If a district judge, having in a case appealable merely as to amount been applied to under his supervisory power over the First City Court, to force that court to grant an appeal which it had refused when all parties conceded that fourteen months had elapsed since the signing of the judgment, had made peremptory a mandamus to that effect on the ground that sixteen months and not one year was the legal period under which an appeal would lie, I do not admit that because the case was within the appellate jurisdiction of the District Court *merely as to amount* that the order of the court would not be reviewable by us under our own supervisory powers. I see no difference in principle between that case and the one at bar, except that instead of a question involving the legal time for a devolutive appeal, the question presented was as to the legal *condition* under which a judgment could be "suspensively " appealed from.

If the legal premises on the subject from which the judge acted had been correct, we ought to leave untrammeled in his hands questions of law within and subordinate to those correct legal premises; but if his premises were wrong in point of law, we ought to place him right on that point.

The First City Court had jurisdiction *quoad* the execution of the Rocchi judgment; the Civil District Court had not. C. P. 846.

Under Section 781 of his book on Extraordinary Legal Remedies Mr. High, speaking of prohibition, says: "The province of the writ is not necessarily confined to cases where the subordinate court is absolutely devoid of jurisdiction, but is also extended to cases where such tribunal, although rightfully exercising jurisdiction of the subject matter in controversy, has exceeded its legitimate powers."

In a note under that section, Justice Selden is cited as saying: "It is true that the most frequent occasions for the use of the writ are where a subordinate tribunal assumes to entertain some cause or proceeding over which it has no control. But the necessity for the writ is the same where in a matter of which such tribunal has jurisdiction it goes beyond its legitimate powers, and the authorities show that the writ is equally applicable to such a case," citing as an example the case where after a conviction for felony the court had at a subsequent term granted a new trial upon the merits.

Mr. Jacob is also quoted as saying, in treating of the writ, " that it may issue to inferior courts of every description whenever they attempt to take cognizance of cases over which they have no jurisdiction, or if in handling of matter within their jurisdiction they transgress the bounds prescribed to them by the laws of England."

Reference is also made to Lord Kenyon, who, after admitting that for a mere error in giving a judgment which the court had power to render the writ would not lie, said: "Now in this case, with respect to the compelling of a production of the church wardens' accounts, the spiritual court had exclusive jurisdiction, but there their authority ceases, and everything which they did afterward was an excess of jurisdiction for which a prohibition ought to be granted."

The author says of these citations: "These cases prove that the writ lies to prevent the exercise of any unauthorized power in a cause or proceeding of which the subordinate tribunal has jurisdiction no less than when the entire cause is without its jurisdiction."

In the case of Windsor vs. McVeigh, 93 U. S. 274, the Supreme Court of the United States declared that the doctrine that where a court has once acquired jurisdiction it has a right to decide every question which arises in the cause, and its judgment, however erroneous, can not be collaterally assailed, was, like all general propositions, subject to many qualifications in its application. That all courts, even the highest, are more or less limited in their jurisdiction; they are limited to particular classes of actions, such as

civil or criminal; or to particular modes of administering relief, such as legal or equitable; or to transactions of a special character, such as arise on navigable rivers or relate to the testamentary disposition of estates, or to the use of particular process; that though a court may profess jurisdiction of a cause, of the subject matter and of the parties, it is still limited in its mode of procedure and in the extent and character of its judgments; that it must act judicially on all things and can not *then* transcend the power conferred by the law. That the doctrine referred to was only correct when the court proceeds after acquiring jurisdiction of a case according to the established modes governing the class to which it belongs, and does not transcend in the extent or character of the judgment the law which is applicable to it.

I find in the case at bar as a fact that the district judge has interfered, is now interfering, and will continue to interfere with the execution of a judgment in the First City Court over which that court had and has now *jurisdiction* for that purpose, and the execution of which the Civil District Court had no legal authority to stay by appeal, and that he has illegally, without authority and without remedy to the party aggrieved, quashed a writ of *fi. fa.* legally issued by the First City Court acting within its fixed jurisdiction for that purpose, and illegally without authority deprived the seizing creditor of a privilege on property seized under the writ. Finding these facts and having the unquestionable legal constitutional power of affording relief, I think in the exercise of our discretion under that power it should be granted. C. P. 846.

### DISSENTING OPINION.

WATKINS, J. The object of this suit is to compel the respondent to send up to this court a certified copy of the record and all proceedings in the suit in his court entitled State ex rel. Demma vs. Judge of the First City Court et als., No. 37,612 of the docket of the Civil District Court, same being an application and proceeding by way of prohibition, mandamus and certiorari against John Rocchi, the judge of the First City Court of New Orleans, and the constable thereof; and, further, to restrain the said three respondents from any further proceedings therein.

The proceedings and writs applied for in the last named suit were aimed at the suit and judgment in the First City Court, entitled

John Rocchi vs. Angelo Demma, No. 22,048, the plaintiff therein being the relator in the former suit; the object of the present suit being to liberate the judge and constable from Demma's prohibition and mandamus, so that the relator may proceed with the execution of his judgment; and that of the former being to prevent further proceedings under the judgment, and to bring up an appeal therefrom to the Civil District Court.

And upon these issues and pleadings, the question for our decision is whether this court has and can exercise *supervisory* jurisdiction over the respondent, as judge of the Civil District Court, to prevent further proceedings on his part in the exercise of the *supervisory* jurisdiction of the Civil District Court over the judge of the First City Court.

The answer of the respondent is, substantially, that he acted *in aid of the appellate jurisdiction* of the Civil District Court over the First City Court, and that his proceedings and judgment are regular, legal, and proper under the surrounding circumstances, and same are not reviewable by this court in the exercise of its supervisory authority and jurisdiction over *all* inferior courts.

From this statement it is manifest that the respondent did not try and adjudge any question appertaining to the *merits* of the suit of Rocchi vs. Demma, but simply granted relief to *one* of the parties therein, *quoad* the the *other* party and the judge and executive officer of the First City Court. And it is equally manifest that this court has ample and complete jurisdiction to *supervise* the respondent's judgment in the premises, and find and decide whether it is, legitimately and properly, a decree *in aid of the appellate jurisdiction* of the Civil District Court.

The case of Rocchi vs. Demma being a suit for a moneyed demand within the appellate jurisdiction of the Civil District Court, it is therein examinable as to the question of debt or no debt, but as to *nothing else*. Unquestionably the respondent had *supervisory* jurisdiction over the city judge, *pro hac vice*, in aid of the *appellate* jurisdiction of the Civil District Court; but beyond this he did not. For greater convenience and precision of statement the proceedings in the two suits must be chronologically and historically recited.

The demand of the plaintiff in the suit of Rocchi vs. Demma was for $59.55 on open account, and the defendant was *personally* cited, and answered, pleading a general denial.

The case was regularly fixed for trial on the merits on the 5th of July, 1892, and, on that date, there was a contradictory trial had, and a definitive judgment pronounced *in presence of the parties*, and in favor of the *plaintiff*.

On the 8th of July, 1892, the defendant filed a motion for a new trial, which was, by consent of parties, fixed for trial on the 16th of July, 1892, and subsequently postponed to the 26th of July, 1892.

On the date last mentioned the aforesaid motion was, *in defendant's absence*, tried and overruled, and, subsequently, *notice thereof was not given to the defendant*.

On the 3d of August, 1892, a writ of *fieri facias* was issued in the execution of said judgment, and thereunder the constable of the First City Court seized property of the defendant, Demma, in satisfaction thereof, no appeal, either suspensive or devolutive, having been applied for until the 22d of December, 1892, following.

In order to arrest further proceedings in that suit, as well as under the judgment and *fi. fa.* therein, the defendant and judgment debtor, Demma, petitioned to the Civil District Court, in the aforesaid cause of Demma vs. Judge, for the aforesaid relief.

Of the proceedings in that suit the relator, Rocchi, complains, in the instant suit, on the following grounds, viz.:

1. That the judgment and decree of the Civil District Court, in a previous suit of same title, bearing the number 36,414, based upon the same state of facts and law as suit numbered 37,612 is, and wherein the demands of the relator, Demma, were rejected, forms *res adjudicata* as to the suit last named; and that, notwithstanding said plea was presented and pressed upon the respondent's attention, the same was disregarded and overruled.

2. That said judgment in suit of Rocchi vs. Demma was final and executory when the *fi. fa.* was therein issued, and property seized thereunder—no appeal, either devolutive or suspensive, having been applied for until long after the lapse of the legal delays for appealing suspensively.

And upon the foregoing grounds he makes the charge that, in entertaining said writs, and in maintaining them as he did, the respondent *exceeded the bounds of his supervisory jurisdiction*.

For the ascertainment of the truth of the matters in controversy between the parties, I must also look into the record of the suit of Demma vs. Judge, No. 37,612; and having made such examination I have found the following facts, viz.:

That the complaint of Demma, relator, is that subsequent to the ruling of the judge of the City Court, *refusing his application for a new trial,* "*no notice of same* was issued or given, *as required by law, and the rules, customs and practice of the city courts* of New Orleans. That without previous notice, or warrant of law, a writ of *fieri facias* was issued on August 3, 1892, and a levy made on relator's property, consisting principally of valuable organs, etc., *and same will be removed and sold unless a writ of prohibition issue herein. That said City Court exceeded its authority and jurisdiction in allowing said writ of fieri facias to issue, and thereunder* to be seized property of your relator, worth the sum of $850.00."

That the judgment in said suit of Rocchi vs. Demma was not final and executory, yet the respondent, city judge, refused to grant him a *suspensive* appeal therefrom, notwithstanding he tendered to him a good and sufficient suspensive appeal bond.

The prayer of relator's petition is: (1) That the constable of the City Court holding the writ of *fi. fa.* be prohibited " from further proceeding in said cause    *    *    in any manner, shape or form;" (2) that the judge of the City Court be commanded to send up to the Civil District Court a certified copy of the proceedings in the suit of Rocchi vs. Demma, for examination, to the end that their legality may be ascertained; and (3) that he " ordered and commanded to grant relator, Demma, a suspensive appeal in said cause," etc.

Practically, the contention of Rocchi in that case—Demma vs. Judge—was the same as it is in the instant case, to-wit: First, that the judgment in suit of Demma vs. Judge, No. 36,414, formed *res judicata* against suit of same title, No. 37,612; second, that the judgment in Rocchi vs. Demma, was final, executory, and not suspensively appealable; third, that the *fi. fa.* issued thereunder was proper and legal, and a seizure thereunder was properly made; fourth, that the First City Court, upon proper application, was competent to correct any errors in the *proceedings subsequent to judgment, but that Demma had made no application to said court, either to quash the execution, or to injoin the seizure and sale of his property under it.*

Upon the foregoing pleadings and issues, the respondent, as judge of Division D of the Civil District Court, maintained and made peremptory *all three* of said writs; decreed that the constable should proceed no further, " in any manner, shape or form," in the execution of the writ of *fi. fa.;* and required the city judge to grant Demma

a suspensive appeal from said judgment, *after having first caused a notice of judgment to be issued and served upon him, according to law.*

With due regard to the opinion of our learned brother of the District Court, I am firmly of the conviction that, in *deciding the case of Demma vs. Judge as he did,* and *upon the grounds upon which he placed his judgment, he exceeded the bounds of his supervisory jurisdiction* over the respondent, city judge; and that said proceedings and judgment were not in aid of the appellate jurisdiction of the Civil District Court, in the following particulars, viz.:

### First.

In entertaining and making peremptory the writs of *certiorari* and prohibition, notwithstanding the respondent's plea of *res judicata,* based upon a previous judgment rendered by the judge of Division A of same court, in a suit of same title, grounded upon the same state of facts, and bearing the docket No. 36,414, wherein the demands of relator, Demma, were rejected.

From that record it appears that, upon identically the same cause of action—that is to say, in so far as the writs of *certiorari* and prohibition are concerned—Demma petitioned for relief by restraining the execution of judgment against him.

That, upon the trial, this relief was refused, because: First, he had not alleged that he had previously applied to the City Court for a suspensive appeal; and, second, that he had not alleged and proved that he had previously applied to the City Court to abate the alleged *premature execution,* and that his application had been refused.

The record of said first-named suit of Demma vs. Judge, No. 36,414, discloses that, *inter alios,* the judge assigned the following reasons for his judgment thereon, viz.:

" Without allegation of application for relief in the City Court, there is no justification for seeking relief in the Civil District Court, which, without such a showing, has no power to interfere with the order and principles of the City Court.

There is no allegation to justify the writ of prohibition applied for. C. P. 846. * * * " With no application for an appeal alleged; with no refusal of an appeal, *or refusal to grant relief from a premature execution* (if there was such) alleged by relator (this court has) *no power to review the action of the judge of the City Court* on the

facts alleged by the relator. For these reasons the writs are refused."

Of the correctness of the judge's conclusions there can be no doubt; nor can there be any doubt of the binding force of his judgment in any similar proceedings between the same parties, upon the same cause of action; yet, in the second suit, of same title, No. 37,612, it appears that the same relator, Demma, petitioned the same court for the self-same relief, by way of prohibition and *certiorari*— only making the additional allegation that he had, intermediately, applied for a *suspensive* appeal in vain, and prayed for a writ of mandamus to compel the city judge to grant the requisite order. Hence, it is obvious that the writ of mandamus alone distinguishes the second suit from the first one—*no effort having been made, meanwhile, to obtain relief from the execution in the City Court* from the execution that is said to have been prematurely issued.

On this manifestly correct hypothesis there can be no escape from the conclusion that the judgment of Division A of the Civil District Court refusing Demma relief by way of *certiorari* and prohibition— no change in the *status* of the case having occurred—is and was, absolutely, binding upon him, and constitutes a bar to the second suit, *quoad* those two writs—not in any way interfering with the writ of mandamus, it not being affected by the refusal of the other two.

## *Second.*

In prohibiting the constable of the City Court from proceeding under a writ of *fi. fa.* that was regularly issued, under a judgment that had been rendered conformably to law by a court of admittedly competent jurisdiction.

First, because relief by prohibition is confined, ordinarily, to *pending suits* (C. P. 828? 846, 849); the only exception being the case of a judge having "rendered a judgment in a cause when *he had not jurisdiction*" (C. P. 853)—it being competent, in such case, for an appellate tribunal—other than the Supreme Court—to abate an execution issued thereunder, as part of the relief it is entitled to grant, by way of prohibition in aid of its appellate jurisdiction; and in such case it is competent for the execution officer holding a writ to be made co-respondent. But the First City Court had undoubted jurisdiction of the suit of Rocchi vs. Demma, and it was clearly competent to decide that cause and render final judgment thereon; and

the complaint in the case of Demma vs. Judge, was, *only*, that execution had *prematurely* issued, before same became final and executory for the cause above stated.

Second, because relief by way of *certiorari* can not be made efficacious to restrain an execution under a judgment *longer* than is necessary for the court to determine the validity of the proceedings, extrinsically, and the judgment thereon pronounced (C. P. 866); and such proceedings having been brought up, examined and found to be regular, *certiorari* can no longer restrain a *fi. fa.* therein.

Hence, the case of Rocchi vs. Demma having gone to judgment in the City Court on the 5th of July, 1892—same being a court of competent jurisdiction—there was, in my opinion, unquestionably no color of legal right, or jurisdiction, on the part of the respondent judge to interfere by way of prohibition with the execution of the judgment therein pronounced in such manner as the judge of said court deemed legal and proper. In my opinion it is equally unquestionable that the respondent had no jurisdiction or authority to control the constable of the City Court, and, by means of prohibition restrain his said proceedings thereunder—the *prematurity* of issuance of *fi. fa.* involving a question of *original* jurisdiction of the *City Court*, and not the *appellate* jurisdiction of the *Civil District Court*. In thus maintaining and enforcing said writs of *certiorari* and prohibition the respondent can not be said to have acted in aid of the appellate jurisdiction of the Civil District Court, when it is not the province of such an appeal to test and determine the prematurity of a *fi. fa.* issued under the judgment appealed from. Dayton vs. Commercial Bank, 6 R. 17; Rowley vs. Kemp, 2 An. 361; Aubert vs. Robinson 6 R. 463.

In Davidson vs. City, 42 An. 1245, it was substantially decided that causes affecting the jurisdiction of a judgment and requiring a limitation or a restriction of the execution, when the cause has arisen *after the rendition of the final decree, are cognizable by the lower court·*

### Third.

In commanding the judge of the City Court—by means of the writ of mandamus—to *issue a notice of judgment* in the case of Rocchi vs. Demma, and cause the same to be served on Demma, judgment debtor, whereas Demma had never alleged that the *service of a notice of judgment* was a condition precedent to its finality or exigibility;

and his petition, in Demma vs. Judge, contains no such averment—his sole complaint being that *execution had prematurely issued before he had been served with notice that his motion for a new trial had been overruled*, and, on that ground—and on that ground alone—he made the declaration that the *judgment was not final or executory*—setting up as his authority for the averment, " the rules, customs and usages of the City Courts of New Orleans."

The relief granted was, manifestly, *ultra petitionem*—the rule of law being that a notice of judgment is not requisite to the finality of a judgment that is pronounced in the presence of the parties. C. P. 1131, 575.

The substantial requirements of Act 129 of 1888 is that no appeal shall stay execution of a judgment of a City Court in the parish of Orleans unless it has been taken " within three days after final judgment, if it has been pronounced *in the presence of the parties*"—making no material alteration in the phraseology of the foregoing articles, but rather making the former applicable to City Courts, just as to justice courts in country parishes.

And the certified abstract of the proceedings of the City Court in Rocchi vs. Demma show that not only was Demma personally cited, and that he appeared and answered, pleading a general denial, but that the case was tried *in the presence of the counsel of both parties;* and in my opinion that fulfils the requirement of the law.

Such being the case, the judgment became final and executory the moment Demma's motion for new trial was overruled, and it is not pretended *in this court* that he was entitled to any notice of his motion being overruled, or that failure to give such a notice rendered the issuance of an execution premature.

Demma's answer was a *quasi* confession of liability, and his application for a new trial was manifestly intended to obtain delay.

Under this state of facts it appears to me difficult to conceive how the respondent could hold that Demma was entitled to a *suspensive* appeal from a judgment that was confessedly final; particularly in view of the fact that no one has doubted, or denied that he is and was entitled to appeal *devolutively*, though he has never made an application to that effect.

In my opinion the respondent erroneously acted on the assumption that notice of judgment was requisite to *the finality* of the judgment, and exceeded the bounds of his jurisdiction in compelling the city

judge to grant an order of suspensive appeal from a judgment that had ceased to be suspensively appealable; and in commanding the constable to desist from all further proceedings under the execution thereof; and that, in the exercise of its supervisory power over all inferior courts, this court has ample jurisdiction and authority to prohibit any further proceedings of the respondent judge in the exercise of the supervisory jurisdiction of the Civil District Court over the First City Court, on the ground and for the reason that his judgment and decree were not in aid of the appellate jurisdiction of said court.

For the foregoing reasons I dissent from the views expressed in the opinion of the majority of the court, and concur in those of Chief Justice Nicholls.