Statement of the Case.
NICHOLLS, C. J.
Relators in their pietition averred that on December 25, 1903 (in the suit of F. W. Armbruster against Duffy & Behan on the docket of the civil district court for the parish of Orleans) a writ of sequestration was sued out before the. civil district court ordering the civil sheriff to seize and take into his possession the sum of $3,-000 claimed as the property of Armbruster, as well as the sum of $416, and some further sums, which were also claimed by Armbruster as .a member of the firm of Duffy & Behan, all of which it was alleged was contained in a bank box in the possession of or under the control of either said Duffy or Behan, all of which would appear by reference to the record in said suit; that the civil sheriff did seize and take into his possession all of the property, moneys, papers, and documents in the possession of petitioners, but that petitioners did not turn over to the said sheriff the sum of $3,000 specially claimed as the personal property of F. W. Armbruster, because no such money was in their possession or under their control. The moneys and property turned over to the sheriff under said writ were inventoried by the civil sheriff and as shown by the record.
They represented that on or about December 27, 1903, the said Armbruster in said suit of Armbruster against Duffy & Behan filed with and obtained from the judge of the civil district court for the parish of Orleans a rule for contempt ordering petitioners to show cause why they should not produce the said $3,000, as well as the $416, or be punished for contempt of the orders of the honorable the civil district court aforesaid; and the said rule was fixed for trial before said court, and evidence heard, and an order rendered by said court ordering petitioners to produce the said sums by 2 o’clock of that day, or hold themselves .subject to such action for contempt as the honorable court might take in the matter.
That the order of the court could not be complied with, because the petitioners were unable to produce the said money; and that *185 the judgment of the court directing them to produce the same or hold themselves liable for contempt was not the proper remedy. That the court could not, by a rule for contempt, decide the merits of the case, and that judgment ordering petitioners to produce the said money was a judgment on the merits. That the order was harsh and oppressive, because it was impossible of execution; relators declaring that they were not in possession of said money, that they did not have it at the time of the seizure, and that they turned over to the sheriff all of the money and property in their possession or under their control.
That the matters contained in said rule for contempt were not proper subjects for a contempt proceeding, and that a judgment ordering petitioners to produce said specific amounts or in the alternative suffer imprisonment was a denial of justice, and practically an imprisonment for debt, which was contrary to the laws of this state.
That, unless prohibited by the Supreme Court, the Honorable John St. Paul, Judge of Division C of the civil district court, would issue an order condemning petitioners to imprisonment unless petitioners produced the said sums of $3,000 and $400, which said moneys petitioners had declared under oath were not in their possession, and that writs of certiorari and prohibition were necessary in order to prevent a denial of justice. That a writ of certiorari was also necessary directing the said civil district court, Judge St. Paul presiding, to send up the record and XR'oceedings of the trial of the rule for contempt.
They prayed that a writ of prohibition issue directed to the Honorable John St. Paul, Judge of Division C of the civil district court for the parish of Orleans, prohibiting said judge from proceeding further in the execution of the judgment rendered on the trial of the rule of contempt against petitioner in .the suit of E. W. Armbruster against Duffy & Behan.
They further prayed for a writ of certiorari directed to the said judge, directing him to produce and file with the Supreme Court the record and proceedings in the said suit of Armbruster against Duffy & Behan, and that upon a review of the said proceedings the said writ be made peremptory and the said judge be prohibited and enjoined from proceeding further in the trial of the said rule for contempt or from executing the order of the court by imprisoning petitioners for contempt on the ground that the subject-matter of said rule was not properly a contempt proceeding.
And for all such other and further orders in the premises as the nature of the case might require.
This court ordered the lower court to send up a certified copy of the record in the case of Armbruster against Duffy & Behan, and it was ordered to show cause why the writs applied for should not issue, and it directed that all parties in interest be notified. The record has • been sent up as ordered. The Xilaintiff Armbruster, for cause why the writs should not issue, answered:
(1) That the proceedings complained of were regular and proper in every respect, and that no objection of any kind was made to the trial of same in the civil district court.
(2) That no plea to the jurisdiction of the district court was filed to its right and authority to entertain the rule for contempt, and no objection or exception of any kind was made to the form of proceeding.
(3) That the rule which was filed in the civil district court on December 28, 1903, ordered the defendants in that case (the relators herein) to show cause on Thursday, December 31, 1903, why they should not forthwith turn over to the civil sheriff a certain sum of money, to wit, the sum of $3,416, or be punished for contempt of court for failing so *187 to do. That for certain causes and the press of other business said rule was continued from December 31 to January 4, 1904, and from January 4th to January 12th, from January 12th to January 14th, and from January 14th to January 20th, when same was regularly called for trial, all parties and their counsel being present in court and announcing their readiness for trial. Thereupon said rule was read to the court, and the defendants therein (the relators here) filed an answer to said rule, praying that same be dismissed for causes set forth in said answer.
That though said answer was produced and read to the court on January 20th, through an oversight same was not filed until the next day, but same was the only pleading of the defendants (the relators here) at the time of the calling of said rule for trial and at the time of trying same. That thereafter witnesses were heard, the plaintiff first testifying in his own behalf, the defendants testifying, and one other witness on their behalf, the four witnesses on behalf of the plaintiff, the plaintiff himself again going on the stand, and two more witnesses examined on belialf of the defendants, and finally the plaintiff going on the stand and answering one.more question, and the case was thereupon closed by all parties.
That all of the testimony was heard without objection on behalf of the defendants, this respondent objecting to one question to one of the witnesses, but not pressing said objection, and objecting to the defendants being allowed to introduce further evidence áfter the witnesses on behalf of this respondent had been heard in rebuttal; but this objection likewise was not pressed, and the court heard their witnesses and every question propounded on behalf of the defendants. That neither by pleading nor orally did the defendants make any objection to the proceeding, or to the form of proceeding or to the jurisdiction of the court, or to the power of the court in the premises. That after hearing all of said evidence the case was . continued until the next day — Thursday, January 23, '1904 — when same was argued by counsel for both parties, and, being submitted to the court, the court rendered judgment making absolute the rule, and ordering the defendants before the hour of 2 o’clock p. m. to turn over to the sheriff, by virtue of the writ of sequestration in his hands, the sum of $3,303.80, or in default thereof they were ordered to reappear before the court at 2 o’clock p. m. for further proceedings.
That at the hour of 2:30 o’clock p. m., after the judge of the civil district court had been notified that an application for a writ of prohibition would be made to this court, and after the case had been continued until Friday, January 23d, at 11 o’clock a. m., to await the action of this court, the attorney for defendants (relators herein) then filed what he called a “peremptory exception to the rule for contempt,” reading as follows: “And now into the court comes the defendant herein, and peremptorily excepts to the remedy sought for in the rule for contempt because same is not the proper method of obtaining possession of the moneys claimed under the writ of sequestration.”
That said exception, having been filed after issue joined after the case was tried, and after judgment rendered, could have no effect, and could not be considered either by the civil district court or by this court.
(4) That for the foregoing reasons the writs asked for should not be issued by the court, but this proceeding should be dismissed, and the restraining order recalled, so that the judge of the district court might proceed with the ease regularly, and in order. That the proceedings of the civil district court, as aforesaid, were not amenable to any of the charges set forth in the petition in this case; but, even if they were — which was specially denied — the defendants there (the relators here) could not complain of same to this court, because said proceedings were sane *189 tioned by them by their pleading to the merits, and trying the case without objection, and without excepting to the jurisdiction and power of the court to entertain and try the case as presented in the rule taken by this respondent.
In view of the premises respondent prayed the court that the rule to show cause be discharged, the restraining order recalled, and the relief asked for by relators herein be denied.
The district judge, for cause why the writs should not issue, averred that the allegations of fact made by Armbruster in his answer were true and correct.
In the application made by Armbruster for a rule upon the defendants for contempt he averred that under the writ of sequestration the sheriff was ordered to seize and take into his possession certain moneys, especially the sum of $3,000, alleged to be in the possession of defendants, and belonging to him, and the sum of $416, also alleged to be in their possession, of which he was the owner of an undivided half interest; that said moneys were not received by the sheriff because removed by the defendants from the box in which same was placed by himself and the defendants on December 24, 1903, and were not in sáid box when same was seized by the sheriff on December 25, 1903, and they were therefore obstructing the process of the court, and were in contempt of its authority. The district court ordered the defendants to show cause why, on the 31st of December, 1903, they should not forthwith turn over to the sheriff the said sum of $3,416 or be punished for contempt for not doing so.
The rule was continued-to January 3, 1904, and then to January 14th, and finally taken up on January 20th, when evidence was taken and argument heard. On that day defendants answered the rule. They averred they had no desire to be in contempt of the order of the court; that as a matter of fact they turned over to the sheriff all the moneys; in their possession or under their control at the time of the seizure; that they did not have in their possession the said moneys; that no such amount was in their possession or under their control for many days previous to the seizure, and therefore they were unable to turn the same over to the sheriff; that they had turned over to him all the moneys in their possession called for by the writ. The court considering the law and evidence to be in favor of the plaintiff in rule and against defendants, ordered them to turn over to the civil sheriff, by virtue of the writ held by him, prior to the hour of 2 o’clock, the sum of $3,303. In default thereof they were ordered to reappear before the court at that hour for further proceedings. At 40 minutes after 1 o’clock the attorney of defendants appeared, and notified the court that that they were applying to the Supreme Court for writs of certiorari and prohibition. In view of that fact the court announced it would take' no further action pending consideration of the same.
On the 21st of January, 1904, defendants excepted to the remedy sought for in the rule for contempt because the same was not the proper remedy for obtaining possession of the moneys claimed under the writ of sequestration.
On the 22d of January, 1904, the court continued the rule indefinitely, and stayed all proceedings until further orders of the Supreme Court.
Opinion.
The remedies by which the private rights and obligations of the litigants in j'udicial proceedings are protected and enforced are provided for in the Code of Practice and the statutes of the state. A proceeding directed by a court against a party to show cause why he should not be punished for contempt of its authority in refusing to obey its orders is not one designed for the benefit of one or more of the litigants, though infliction of *191 punishment upon that party under a finding that he was guilty as charged may inure to the benefit of the mover in the rule by way of consequence or result through his final compliance with the court’s orders.
The object and purpose of a proceeding for contempt is to vindicate the authority and maintain the dignity of the court itself. In Haines v. Haines, 35 Mich. 138, the court declared that the enforcement of civil re'medies by contempt proceedings was to be regarded as an extreme resort, not to be allowed when there is any other adequate remedy; and in Re State ex rel. Hero, 36 La. Ann. 355, this court said the effect of the proceedings in that case would be to impose imprisonment as a means for enforcing obligations or as a penalty for failing to fulfill obligations, and this the law of Louisiana did not, save in exceptional cases, permit. In that case the judge of Division O of the civil district court in the matter of the Succession of Kate Townsend, pending in that court, issued an order or writ of sequestration commanding the sheriff to sequester and take into his possession property belonging to said succession, and specially certain movables stated therein to be in the possession of Andrew Hero. The sheriff, in execution of the order, demanded from 1-Iero the delivery of said movables, who failed to make delivery, denying that he had possession 'thereof. Thereupon the judge issued a rule upon Hero to show cause why he should not be punished for contempt of the order and authority of the court. He made return, denying that he had possession of the property, and averred that he had delivered to the sheriff all property belonging to the succession which was in his possession at the time when the writ of sequestration was issued or when demand was made by the sheriff thérefor.
The court made the rule absolute, declaring it found the fact to be that the property was still under the control of Hero; that he was guilty of ■ contempt in obstructing the civil sheriff in the execution of the writ and in failing to deliver the diamonds and other jewelry to him, notwithstanding he had them in his hands or under his control, and in failing to disclose to the sheriff the place of the present concealment of the same. It ordered him to be imprisoned for 10 days, or until he should deliver the jewelry to the sheriff. Hero then applied to this court for writs of certiorari and habeas corpus, averring that the order committing him to prison for contempt was absolutely null and void, and should be so decreed.
After a hearing this court decreed that the order committing Hero to prison for contempt was null and void. It said: “What was the order? It was an order commanding the sheriff to sequester certain property belonging to the succession, and stated to be in the possession of the relator. Conceding that after notification and demand by the sheriff this had all the effect of an order directed to relator commanding him to deliver, would his refusal subject him to punishment for contempt? It is not pretended that relator held the property under any mandate or authority derived from the court, or was in any peculiar manner subjected to its orders. He was a tliiyd person so far as the succession was concerned. It appears clear that such an order could not have a greater effect than a writ of possession issued in execution of a final judgment decreeing the delivery of a specific object. Yet even in such a case the party condemned could not be punished for contempt for refusal to deliver.
“On the contrary, the Code of Practice specifically provides a different remedy, viz., in an action for damages or by distraint of the other property of the debtor (Code Prac. arts. 635, 636).
“It thus appears that our law does not authorize the enforcement of final judgments, much less of ex parte orders directing the delivery of property, by process for *193 contempt. We lay this down as a general proposition. There may he exceptions, hut certainly the case at bar is not one of them. The relator does not confess possession and defy the authority of the court, even if that would justify such proceeding — on which we express no opinion.
“On the contrary, he denies under oath that he had possession when delivery was demanded, or even when the order of court was issued. If this be true* it may be impossible for him to comply with the order of the court, and in that event, under the commitment as it stands, his imprisonment would be for life. It is true the court finds the fact against him, but this is not sufficient to make the case an exception to the rule above announced. * * * Our law is quite as exact in providing for the ‘execution of judgments requiring something to be given — something to be done’ — as for the execution of judgments directing the payment of a sum of money. These form the subject of separate sections of the Code. There seems no more authority for issuing process of contempt in aid of one other than the other execution.” The Hero Case was referred to approvingly in that of State ex rel. Anglade v. Judge of Sedond City Court, 48 La. Ann. 1415, 20 South. 912, the court'saying: “It was suggested in argument at the bar on behalf of the respondent that there are two modes of executing a fi. fa.— one by causing the sheriff or constable to break open the doors of the safe, hs authorized by article 762, Code Rrac.; and the other by the form of a rule for contempt. The former has the express sanction of law, while no authority that we have found sustains the latter. The respondent has not supported his position on this point by reference to any authority applying to the case. Coercion is only legal when sanctioned by legislative will.”
Article 628 of the Code of Practice declares that orders of execution are different, according to the nature of the judgments to be executed, for these judgments may direct that a thing shall be given or a thing be done or omitted, or a sum of money be paid, and this variety subjects the execution to different rules, which are explained in the two following articles. When a specific remedy is provided by the Code, it should be followed, and the particular remedy provided for not disregarded through a mere change in the form of proceedings.
In this particular case the relators were given no direct orders by the court to deliver money to the sheriff. The order of the court was to the sheriff to sequester, and not to the relators to turn anything over to him. The only direct order given to them by the court was that given by it after they had been called before it to answer the rule for a contempt of court in having removed the money from the box before the sheriff took possession of it. Instead of making that fact the one upon which the issue of contempt was to be determined, the court substituted therefor the neglect of these parties to comply with its direct order (given for-the first time to them on the trial of the rule) to produce the money before 2 o’clock of that day.
If they were to be imprisoned, it would not be for a disobedience of orders antedating the issuing of the rule, but of an order given subsequently to and pending the rule. The act charged as a contempt of court should be one which preceded, and not one which followed, the issuing of the rule. Relators were not called on to answer for this latter act, even if it could be considered to be a contempt of court. State ex rel. Phelps v. Judge, 45 La. Ann. 1257, 14 South. 310, 40 Am. St. Rep. 282.
If a sheriff holding a writ of fi. fa. or an order of sequestration directed to himself for execution by making a demand upon a party having money in his possession to deliver the same to him, could, on being refused, *195 make return of such fact to the court, obtain from it a rule upon such party to show cause why he should not make such delivery, and, failing so to do, to be punished for contempt, the proceeding for contempt would become an easy and convenient general substitute for the usual legal remedies provided by law for the enforcement of rights. If the relators did in fact withdraw from their bank box, as alleged, the moneys which plaintiff in the suit sought to have sequestered prior to a demand made upon them by the sheriff, their action could not be assimilated to a violation of an injunction or a mandamus specially directed to them.
It is not every act rendering ineffectual an order of court which can be followed up by a peremptory order from the court to the party who has brought about that result to replace matters as they were, and, failing so to do, to he committed to prison. The following of such a course of action and the infliction of such a penalty is one for which the court should he able to find legal authority.
We think this case is controlled by that of Hero, and that relators were not subject to punishment for contempt of court.
Respondents insist that relators have lost them right of complaining in the premises, for the reason that the pleadings which they filed were not timely; but we do not think this position tenable. If, in point of law, the district court was without right, power, and authority to imprison or fine the relators for contempt, his action was.and is absolutely null and void, and relators are entitled to protection. The question before us is not one of form, but of power, right, and authority. The mere fact that the court below had jurisdiction over the parties to the suit of Armbruster against Duffy & Behan, and of the merits of the controversy which were raised therein between the litigants, did not prevent particular acts done by the judge in the course of that case from being absolutely beyond his power and authority. See High on Extraordinary Legal Remedies, § 731, and note thereunder, and Windsor v. McVeigh, 93 U. S. 274, 23 L. Ed. 914, quoted at length in State ex rel. Rocchi v. Judge, 45 La. Ann. 547, 12 South. 941.
In the Windsor Case the Supreme Court of the United States said: “Though a court may possess jurisdiction of a cause, of the subject-matter, and of the parties, it is still limited in its mode of procedure and in the extent and character of its judgments; it must act judicially in all things, and cannot then transcend the power conferred by the law. That the doctrine referred to [in that case] was only correct when the court proceeds after acquiring jurisdiction of a case according to the established modes governing the class to which it belongs, and does not transcend in the extent or character of the judgment the law which is applicable to it.” See, on this same subject, State ex rel. Kane v. Lazarus, 37 La. Ann. 402-405; State ex rel. Liversy v. Judge, 34 La. Ann. 741.
The district court not having announced or executed a sentence against relators, they are entitled to a remedy by way of prohibition. Wells on Jurisdiction, c. 16, § 512.
For the reasons herein assigned, it is hereby ordered and decreed that the judgment of the district court adjudging relators guilty of contempt of court be set aside, and it is prohibited from carrying such judgment into execution. It is further ordered and decreed that the rule against relators for contempt be dismissed.