385 So.2d 912 (1980)
CITY OF MONROE, Plaintiff-Appellee,
v.
Robert A. EVANS, Defendant-Appellant.
No. 14193.
Court of Appeal of Louisiana, Second Circuit.
June 10, 1980.
Charles D. Patten, III, Asst. City Atty., Monroe, for plaintiff-appellee.
Joseph A. Cusimano, Jr., Farmerville, for defendant-appellant.
Before MARVIN, JASPER E. JONES and FRED W. JONES, JJ.
JASPER E. JONES, Judge.
Appellant, Robert A. Evans, appeals an order of the trial court finding him in contempt of a June 5, 1979 judgment rendered by the Fourth Judicial District Court for the Parish of Ouachita. We reverse the contempt conviction.
These lengthy proceedings commenced May 11, 1977 when the City of Monroe filed an expropriation proceeding against Evans. The object of the suit was the expropriation of a cottonwood tree located on Evans' property. The tree was alleged to be blocking *913 the clear zone easement required by the Federal Aviation Administration for proper air navigation in the area of the Monroe Municipal Airport. Approximately ½ hour before trial on Feb. 15, 1978, a cash deed that purported to be a transfer of the subject property from Evans to one John D. Bolton was filed and recorded. The trial court apparently denied Evans' Motion to Dismiss (based upon this change in ownership), but the matter was not taken up again until June 5, 1979 when a Joint Motion to Dismiss was filed which contained the following stipulation:
"It is further agreed to by all parties that the tree in question shall be owned by the City of Monroe in its entirety."
On this date a judgment was rendered which provides:
"Considering the above and foregoing Joint Motion To Dismiss:
Let the matter be dismissed at the cost of Plaintiff and let the City of Monroe be declared owner of the tree which is the subject of the suit."
A review of this judgment establishes it did nothing more than declare the City to be the owner of the tree.
On September 24, 1979, the City filed a Rule For Contempt alleging that Evans should be punished for "refusing to comply with the order of this Honorable Court". The order here referred to was the one quoted above which was rendered June 5, 1979. Evans had prompted the City's rule by refusing to allow the Northeast La. Tree Service, who was employed by the City, to cut down the tree. When the Tree Service representative came to Evans' property in order to view the tree and make preparations for its removal the following day, Evans proceeded to chain a monkey in the tree and then to park two trucks under the tree. The City alleged Evans' refusal to allow the City to cut down the tree constituted a contempt of court.
The trial court found Evans to be in contempt of the June 5, 1979 order and ordered him placed in the Ouachita Parish jail until he permitted the City to cut down the tree.
On appeal the issues are (1) is this contempt conviction reviewable on appeal? and (2) is the contempt conviction valid?
The majority of the jurisprudence holds that a review of a contempt conviction may be had only by application for supervisory writs. See Pearce v. Dozier, 181 So.2d 432 (La.App.2d Cir. 1965); The Advertiser, Div. of Independent, Inc. v. Charles B. Tubbs, 199 So.2d 426 (La.App.3d Cir. 1967); Wall v. Wall, 230 So.2d 420 (La.App.1st Cir. 1969); Pasternack v. Lubritz, 280 So.2d 352 (La.App.3d Cir. 1973); Matter on Carter, 357 So.2d 1175 (La. App.3d Cir. 1978). However, we have found a substantial number of cases wherein contempt convictions are reviewed on direct appeal, as well as cases in which the contempt convictions have been reviewed on appeal while the appellate court was reviewing other related appealable matters. See Lambert v. Adams, 347 So.2d 883 (La. App.3d Cir. 1977); Weeks v. Weeks, 349 So.2d 1008 (La.App.2d Cir. 1977); Wright v. Dept. of Hwys., 359 So.2d 635 (La.App.1st Cir. 1978); Rosselli v. Rosselli, 352 So.2d 370 (La.App.4th Cir. 1977); N. O. Fire Fighters Asso. Local 632 v. City of N. O., 260 So.2d 779 (La.App.4th Cir. 1972); Bruner v. Bruner, 373 So.2d 971 (La.App.2d Cir. 1979).
Evans did not employ an attorney until after he appealed the contempt judgment in proper person. We have the authority to "do justice" on the record, LSA-C.C.P. art. 2164[1] and comments, whether we treat Evans' efforts to obtain review as an appeal or as an application for the exercise of our supervisory jurisdiction. Accordingly, we will review the correctness of the judgment complained of.
*914 Our provisions for contempt are found in LSA-C.C.P. arts. 221[2] and 224. If appellant is guilty of a contempt, his violation falls under Art. 224(2)[3], viz., a constructive contempt consisting of "willful disobedience of any lawful judgment, order, mandate, writ, or process of the court". The City's allegation in its rule for contempt is that appellant should be punished for "refusing to comply with the order of this Honorable Court." Therefore, Evans' violation, if any, is purported to be his refusal to comply with the court order in question, that is, the order of June 5, 1979 declaring the City to be the owner of the tree. Nothing more was contained in the court order here alleged to have been violated than the declaration of ownership. We hold that under the facts defendant-appellant cannot be held in contempt and the order of contempt must be dissolved.
The jurisprudence interpreting LSA-C.C.P. 224(2) and its legislative predecessors is clear that a party cannot be held in contempt unless he has been given a direct order of the court and has refused to honor this direct order. Thus in State ex rel Hero, 36 La.Ann. 352 (1884), the contempt order was dissolved when the Supreme Court found that the only court order which had been given was one directing the sheriff to sequester certain property. The fact that Hero refused to deliver the movables in question did not subject him to a contempt order, as there was no direct order to Hero ordering him to turn over the property. This case was followed in State ex rel. Duffy & Buran v. Civ. Dist. Ct. For Par. of Orl., 112 La. 182, 36 So. 315 (1904), in which the Supreme Court stated (in regard to the relators' being held in contempt for violation of a court order directing the sheriff to sequester certain monies which the relators refused to turn over to the sheriff) 36 So. at pp. 319-320:
"It is not every act rendering ineffectual an order of court which can be followed by a peremptory order from the court to the party who has brought about that result to replace matters as they were, and, failing so to do, to be committed to prison. The following of such a course of action and the infliction of such a penalty is one for which the court should be able to find legal authority."
More recently, in Lambert v. Adams, supra, the Third Circuit cited the above two cases as well as Article 5, § 2 of the 1974 Louisiana Constitution[4] and LSA-C.C.P. 221 and 224(2) when reversing appellant's contempt conviction. Appellant in Lambert, supra, was held for contempt for violating a judgment dismissing his petitory action, which judgment was only an adjudication that appellant did not own the property in question. When appellant failed to vacate the property, appellees filed suit to have him held in contempt. However, there was never any direct order to appellant to vacate. Because the object of a contempt proceeding is vindication of the authority and dignity of the court, and not for the benefit of the litigants, a party is not in contempt of a court order unless he willfully disobeys a direct court order issued prior to a contempt rule. Even if the acts of the litigant frustrate the opposing party, there is no contempt committed until the litigant flaunts a specific order of the court. Lambert, supra, held that since prior to the *915 contempt rule there was no direct order by the trial court directing appellant to vacate, his failure to leave the premises did not impair the dignity of the court, and therefore the authority of the court did not need to be vindicated. The appellate court recalled and set aside the contempt adjudication.
Because of the relative sparsity of Louisiana jurisprudence on the subject of contempt convictions based upon an alleged violation of an order, we looked to the law of our sister states in order to better evaluate appellant's contempt conviction. Corpus Juris Secundum provides at pp. 31-32 of Vol. 17 as follows:
"To justify adjudging one guilty of contempt for alleged violation of an order, it must contain a mandatory or prohibitive provision and prescribe definitely what he is to do, ..."
The Iowa case of Lynch v. Uhlenhopp, 78 N.W.2d 491, 248 Iowa 68 (1956), discusses at length the law of contempt citing authorities from Colorado, Ohio New York and California for the rule that before an adjudication of contempt can be made there must be a violation of a judgment which clearly directs what a party is or is not to do. See also McMullin v. City & County of Denver, 242 P.2d 240, 125 Colo. 231 (1952) wherein the court refused to hold defendant guilty of contempt of a judgment which did nothing more than adjudicate property rights. The court said:
"The violation of property rights and the right of property ownership, even when such rights have been decreed by a court with full jurisdiction, does not constitute contempt of court. If the property rights of plaintiff have been interfered with, our laws provide appropriate procedure and remedies therefor.
Our reading of the various cases cited, discloses that where decrees have been contemptuously violated, such decrees contained either or both prohibitory or mandatory provisions. If we recognize and approve the attempt here to change a quiet-title decree into an injunctive decree, the disastrous results would be interminable." Id. 242 P.2d at p. 242. See also Uservo, Inc. v. Selking, 28 N.E.2d 61, 217 Ind. 567, 1940, which stated 28 N.E.2d at p. 63:
"In Kelly v. City of Cape Girardeau, 230 Mo.App. 137, 89 S.W.2d 693, 696, the court said: `It is an accepted legal proposition that for the decree of a court to suffice to be the basis of a charge of contempt by reason of a party's disobedience to or noncompliance with it, it must be specific and definite so as to inform the party to be bound thereby what he is to do or what he is not to do. Magel v. Gruetli Benivolent Society of St. Louis, 203 Mo.App. 335, 218 S.W. 704'".
Under the Louisiana and common-law jurisprudence appellant cannot be held in contempt of the order declaring the City to be the owner of the tree, for his acts of placing the monkey in the tree and placing the trucks under the tree are not willful disobedience of this order. There has been no direct court order telling Evans to remove these objects or not to place these objects in the path of the tree, or to do no act that interferes with the City's removal of the tree. While it is true that appellant's acts have frustrated and hindered the City, nevertheless, his acts did not impair the dignity of the court.
The City should have obtained an order directing Evans not to interfere with the removal of the tree. If Evans had then performed the acts which he performed in this instance a contempt proceeding would have been appropriate. Since the City failed to obtain such an order and because there was no direct order for which Evans could have been held in contempt, the contempt conviction is fatally defective. We REVERSE the judgment holding Evans in contempt of court and set aside the contempt sentence.
NOTES
[1] LSA-C.C.P. 2164The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages for frivolous appeal; and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable.
[2] LSA-C.C.P. 221A contempt of court is any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority.

Contempts of court are of two kinds, direct and constructive.
[3] LSA-C.C.P. 224(2)A constructive contempt of court is any contempt other than a direct one.

Any one of the following acts constitutes a constructive contempt of court:
* * * * * *
(2) Wilful disobedience of any lawful judgment, order, mandate, writ, or process of the court;
[4] Art. 5, § 2A judge may issue writs of habeas corpus and all other needful writs, orders, and process in aid of the jurisdiction of his court. Exercise of this authority by a judge of the supreme court or of a court of appeal is subject to review by the whole court. The power to punish for contempt of court shall be limited by law. [emphasis supplied].