PER CURIAM*.
Upon application by Burton G. Klein, we granted certiorari to review the correctness of the ruling of the trial judge and set the matter for a hearing. After oral argument, we issued the following order on December 23, 1985:
The judgment of the district court finding defendant in contempt is affirmed; otherwise, the district court judgment is vacated. Finding defendant failed to comply with our order of September 10, 1985, we order defendant to discontinue immediately the display, both on his own lawn and wherever he has supplied exhibits or displays in his neighborhood. Defendant shall disconnect sound and light from the displays and dismantle or remove the displays from 5001 Folse Drive and those lawns which contain exhibits from defendant’s property.
A warrant for defendant’s immediate arrest is ordered, and defendant is remanded to the Jefferson Parish jail. Defendant shall be imprisoned until he performs these acts, or until further orders of the Court.
This order will be followed in due course by an opinion of this Court, which will also rule on the issue of punishment of defendant for past contempt of this Court’s order.![1]!
OPINION
This contempt proceeding follows a ruling of our court on September 10, 1985 *614 wherein we issued a decree in favor of plaintiffs, Herbert Rodrigue, Burton G. Klein and Mary Borrell, and against defendant, Alvin C. Copeland, enjoining defendant from erecting and operating a Christmas exhibition “in a manner which attracts bumper to bumper traffic and extremely large numbers of visitors to his limited access, residential neighborhood.” Rodrigue v. Copeland, 475 So.2d 1071 (La.1985). Defendant has maintained a Christmas display on his premises at 5001 Folse Drive in Jefferson Parish since 1977. Since 1982, it has drawn large numbers of spectators to the neighborhood during the hours in which the display was activated, resulting in numerous problems for some of defendant’s neighbors such as excessive noise from the display and from pedestrian and vehicular traffic and limited access to and from their residences due to incessant traffic. Since 1984, the display has been activated for a thirty-day period during the Christmas season from dusk until 11:00 p.m. on weekdays and until midnight on weekends. The display consisted of an extravagant array of lights across the front of the residence, on the roof and in the enclosed yard west of the residence including oversized lighted figures of a Star of Bethlehem,'a reindeer, a snowman, three angels and a Santa Claus and reindeer. Also included was a tapestry proclaiming “Glory to God in the Highest” and a creche. Christmas music was amplified through loudspeakers located on the second floor of defendant’s residence. The cost of the display is somewhere between $30,000 and $50,000.
In granting injunctive relief, we found that the display caused real damage under La.Civ.Code arts. 667-669 and irreparable injury to plaintiffs. We placed the burden upon defendant to reduce substantially the size and extravagance of his display to a level which would not attract the large crowds that had been drawn into the neighborhood in the past. While we noted that defendant was free to retain the religious symbols included in his display, we specifically enjoined him from placing oversized lighted figures in his yard or upon the roof of his residence. Defendant was further ordered to reduce the volume of the sound accompanying the display so that it would not be audible from within the homes of his closest neighbors.
On December 9, 1985, plaintiff Burton G. Klein[2] filed with this court a “Motion for Contempt of the Supreme Court of Louisiana and for Damages” alleging that defendant had not complied with the judgment rendered by this court on September 10, 1985. Specifically, he alleged that
defendant [Copeland] has erected a new display as garish and enormous as that of previous years. This light and sound show is calculated to attract crowds of people and thousands of automobiles. Moreover, Copeland has compounded the nuisance caused by the display on his premises by erecting portions of his 1984 display on property owned by certain of his neighbors, specifically, oversized rein-deers, snowmen and a Santa Claus figure.
We transferred the case to the district court and ordered Copeland to show cause before that court why he should not be held in contempt of this court’s order of September 10, 1985 and thereafter punished for such contempt[3] A trial on the rule to show cause was held December 13, 1985. Evidence was taken relating to those events occurring subsequent to the September 10, 1985 order. The trial judge issued an order effective December 13, 1985 adjudging Copeland guilty of contempt. He imposed a one-day imprisonment and a $500 fine for each day he remained in contempt of court. However, the trial judge ruled that Copeland could purge himself of contempt by removing *615 from his premises those features of his display which were located on the western side of his property and by eliminating the music accompanying his display until further orders of that court. The trial of damages was deferred by consent of the court and the parties. Defendant was ordered to pay all costs of the proceedings. On plaintiffs application, we granted cer-tiorari to review the correctness of that decision.[4]
After oral argument, we issued the rul-. ing set forth above, affirming the district court’s finding of contempt but otherwise vacating that judgment. We ordered defendant to dismantle and remove the display from 5001 Folse Drive and the lawns which contained exhibits previously displayed on defendant’s property. A warrant was ordered for defendant’s arrest but we stayed the issuance of the warrant upon the advice of defendant’s attorney that he was proceeding immediately to comply with our order.[5] Defendant proceeded to comply with our order; the displays were not activated on the evening of December 23, 1985 or thereafter.
The evidence offered at the trial of the rule to show cause consisted of the testimony of defendant, various neighbors including plaintiff, the supervisor of the Jefferson Parish Sheriff’s office for the area including Folse Drive and a police officer assigned to work the area nightly. Both plaintiff and defendant offered in evidence photographs of the displays of Copeland and those neighbors who exhibited the oversized lighted figures displayed on Copeland’s premises in previous years, as well as photographs depicting the traffic situation during the evening hours. Plaintiff also introduced several videotapes of this year’s display.
Defendant testified that he deleted the oversized reindeer, snowman, eight reindeer and sleigh and the Santa Claus figure from this year’s display on his premises. In deference to the September 10, 1985 ruling, he “toned down” the overall display by using blue and violet instead of red and green lights. He also testified that he added “neon” to the Star of Bethlehem on his roof, to the tapestries on the front of his house and to the halos of the wise men. He also added a larger manger, two animals and another wise man to the nativity scene. Mr. Copeland further testified that some of his neighbors approached him and asked if they could borrow or use any of the lighted figures that he was enjoined from using on his premises by this court's September 10, 1985 ruling. He agreed to let them display the figures and he erected them on various lawns of his neighbors at his expense. The testimony of these various neighbors was in agreement with that of Mr. Copeland.
In regard to the traffic situation, plaintiff testified that since the display was activated on December 6, 1985, it has attracted bumper to bumper traffic with the exception of one extremely rainy night. Most evenings, the traffic was backed up approximately sixteen blocks down Transcontinental from Copeland’s residence. Three other neighbors testified that traffic was about the same as last year and they experienced difficulty with access to their driveways during the hours that Copeland’s display was activated. Although the supervisor of the area for the Jefferson Parish Sheriff’s Department testified that he did not receive any complaints or observe any problems from December 6 through December 10, the police officer assigned to duty in the area on the same dates testified that the traffic was extremely heavy and about the same as that generated by the display last year. Even defendant admitted that this year’s display created bumper to bumper traffic just as in past years. In regard to the noise from the display, plaintiff testified that he could hear music or sound from the display’s loudspeakers in the front rooms of his home. A neighbor who lives across the street from Copeland testified that she can still hear the music emanating from the *616 display all over her house just as in previous years.
La.Code Civ.P. art. 221 defines a contempt of court as “any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority. Contempts of court are of two kinds, direct and constructive.”
La.Code Civ.P. art. 224 provides:
A constructive contempt of court is any contempt other than a direct one.
Any of the following acts constitutes a constructive contempt of court:
[[Image here]]
(2) Wilful disobedience of any lawful judgment, order, mandate, writ, or process of the court;
[[Image here]]
The jurisprudence interpreting La.Code Civ.P. art. 224(2) is clear that a party cannot be held in contempt unless he has been given a direct order of the court and he has wilfully disobeyed or refused to honor this order. Ferry v. Ferry, 444 So.2d 797 (La.App.3d Cir.1984); Nelson v. Nelson, 421 So.2d 366 (La.App.1st Cir.1982); City of Monroe v. Evans, 385 So.2d 912 (La.App.2d Cir.1980). The plaintiff-in-rule has the burden of proving that the defendant’s conduct constituted a wilful disobedience of the trial court’s order. Ferry v. Ferry, supra; Riley v. Pennix, 442 So.2d 563 (La.App.1st Cir.1983); Nelson v. Nelson, supra.
We find that defendant wilfully disobeyed this court’s ruling of September 10, 1985; hence, he was in contempt of court. We ordered defendant to reduce the size and extravagance of his display to a level which would not draw large crowds to the neighborhood and which would not create bumper to bumper traffic. Almost all of the witnesses called at the trial of the rule to show cause testified that the crowds and traffic were “the same as last year,” and defendant himself admitted that the traffic was “bumper to bumper” since the display was activated on December 6, 1985. We ordered defendant to reduce the volume of any sound accompanying the display so that it would not be audible from within the closest homes of his neighbors. Yet, the testimony of plaintiff and another witness who lives across the street from Copeland revealed that the sound from this year’s display was still audible inside their homes, that is, when the noise of the bumper to bumper traffic did not exceed the sound emanating from the display. Last, we enjoined defendant from placing oversized lighted figures in his yards or upon his roof, noting that “the proper place for those ‘commercial size’ decorations is not within a quiet residential neighborhood.” In circumvention of this directive, he permitted some of his neighbors to erect the figures on their lawns at his expense. It was not the religious display on defendant’s property that caused the bumper to bumper traffic but rather the enlargement of his existing display and the transfer of the oversized lighted figures to the various lawns in his neighborhood. Defendant knew or should have known that the present displays would create the intolerable traffic situation of previous years. Contrary to our September 10, 1985 decree, defendant’s actions have resulted in a display that has continued to attract bumper to bumper traffic and extremely large numbers of visitors to his neighborhood.
Finding defendant in contempt, we ordered a warrant for his immediate arrest and remanded him to the Jefferson Parish jail to be imprisoned until he discontinued immediately the display, both on his own lawn and whereever he had supplied exhibits or displays in his neighborhood. This order was issued pursuant to La.Code Civ.P. art. 226.[6] When this court received notice that defendant was dismantling and removing the displays, we stayed the arrest warrant. Defendant did in fact comply *617 with our order so no imprisonment was required. Having complied immediately with our order, we find that defendant has purged himself of any past contemptuous behavior and we will not impose any punishment for this past contempt. As previously noted, the trial judge deferred the issue of damages.
In accordance with our original decree, we render this opinion. We further order that the arrest warrant previously issued be vacated and set aside and the case be remanded to the district court for further proceedings in accordance with law. All costs are assessed against defendant.
CALOGERO, J., concurs and assigns reasons.
LEMMON, J., concurs.

 Honorable Henry L. Yelverton served as Justice Ad Hoc in place of Justice Jack Crozier Watson, recused.

. 479 So.2d 911 (La.1985).

. At the trial of the contempt rule on December 13, 1985, attorneys for both parties agreed to strike the names of plaintiffs Herbert Rodrigue and Mary Borrell from the proceedings since Mr. Rodrigue moved from the neighborhood over two years ago and Mary Borrell informed counsel that she no longer wished to remain as a plaintiff.

. 479 So.2d 356 (1985).

. 479 So.2d 911 (1985).

. 479 So.2d 912 (La.1985).

. La.Code Civ.P. art. 226 provides:
When a contempt of court consists of. the omission to perform an act which is yet in the power of the person charged with contempt to perform, he may be imprisoned until he performs it, and in such a case this shall be specified in the court’s order.