796 So.2d 726 (2001)
Julia Suzanne Grigsby SMITH,
v.
Bobby Lee SMITH, Jr.,
Bobby Lee Smith, Jr., Appellee,
v.
Julia Suzanne Grigsby Smith, Appellant.
Nos. 35,378-CA and 35,379-CA.
Court of Appeal of Louisiana, Second Circuit.
September 26, 2001.
*727 Rick Fayard, Counsel for Appellant.
Geary S. Aycock, Counsel for Appellee.
Before BROWN, STEWART & PEATROSS, JJ.
PEATROSS, Judge.
This is an appeal from a judgment of the trial court finding Julia S. Grigsby Smith (now Schooler) in contempt for denying Bobby Lee Smith, Jr., visitation with the parties' three minor children. Ms. Smith Schooler appeals, asserting the following two assignments of error: (1) the trial court erred in finding her in constructive contempt of a judgment of the court, and (2) the trial court erred in ordering that the parties each pick up the children from the other's home at the end of scheduled visitations. For the reasons stated herein, the judgment of the trial court is reversed in part and affirmed in part.

FACTS
The Smiths were divorced in 1998 and have had substantial litigation over custody, visitation and support since that time. The proceedings pertinent to this appeal begin with a rule for contempt filed on January 24, 2000, by Mr. Smith and against Ms. Smith Schooler for failure to allow him visitation for two weekends in January 2000. At that time, Ms. Smith Schooler had relocated to Clinton, Mississippi, and Mr. Smith lived in Monroe. The rule was to be heard on March 13, 2000, at which time the parties entered into a stipulation regarding all issues (transportation of the children, holiday and summer visitation). The following stipulation occurred *728 in open court regarding the agreement of the parties:
Mother's counsel: Excuse me. The correction on that, Judge, is that the mother will have the second half of the Easter holiday to include Easter Sunday until 2000-2002.
Father's counsel: That's true, that's what I said.
Mother's counsel: No, you said the first half. So it actually would be the second half. Whatever extended Easter vacation there is, Mister
The Court: the half of the holiday that would include Easter Sunday.
Mother's counsel: Right. That's correct.
Father's counsel: Would be the mother's until the year 2002.
Mother's counsel: That's right.
The Court: Whether it's first half or the second half.
Mother's counsel: That's fine.
Father's counsel: And in the year 2002, father would have that part of the Christmas holiday or the Easter holiday that would include Easter Day....
By order of the court, each party was to prepare a proposed written judgment reflecting the stipulation and submit the same to the trial court. Counsel for Ms. Smith Schooler prepared a judgment and forwarded the same to counsel for Mr. Smith. In the interim, Mr. Smith had changed attorneys and, thereafter, made objections to the judgment as written by Ms. Smith Schooler's counsel and refused to sign it. The following is an excerpt from the unsigned judgment prepared by Ms. Smith Schooler's counsel, which represents her understanding of the stipulation entered in open court:
4) The said JULIA GRIGSBY SMITH SCHOOLER shall continue to exercise custody during the Easter vacation from Good Friday through Easter Sunday through the year 2002, but the custody during the extended periods of Easter vacation either before Good Friday or after Easter Sunday shall be enjoyed by the said BOBBY LEE SMITH, JR. Beginning on Easter, 2003, the parties shall share Easter vacation periods with the Good Friday to Easter Sunday period enjoyed by the parties (sic) on a yearly alternating basis with BOBBY LEE SMITH, JR. enjoying that period in 2003.
As previously stated, Mr. Smith objected, arguing that the stipulation was intended to split the Easter break evenly between the parties, with Ms. Smith Schooler having Easter Sunday custody until 2002. His counsel prepared a judgment to that effect and submitted it to the trial court. When Easter 2000 arrived, however, the trial court had not yet signed a judgment reflecting the parties' stipulation; and, therefore, Ms. Smith Schooler followed her interpretation of the stipulation. Since there was no "extended" Easter vacation beyond Easter Sunday, she did not allow visitation with the father.
At this point, Ms. Smith Schooler notified Mr. Smith that she was relocating to Hattiesburg, Mississippi, because her husband was being transferred. Mr. Smith did not want her to relocate the children; and, on May 18, 2000, he filed a second Rule for Contempt and Modification against Ms. Smith Schooler alleging, inter alia, her failure to allow him Easter visitation and requesting that she not be allowed to move the children. The rule was set for hearing on October 13, 2000. Ms. Smith Schooler responded, stating that Mr. Smith's objections were totally without merit and argued that the minutes clearly reflect the parties' intentions regarding *729 the stipulation. Further, she alleged that Mr. Smith was not paying child support as ordered by the court via income assignment and she requested that he be ordered to do so.
In the interim, on August 3, 2000, Judge Smith entered Judgment on Rule adopting Mr. Smith's interpretation of the stipulation regarding Easter visitation (this is a judgment on the first rule for contempt filed by Mr. Smith in January 2000 and the subsequent stipulation entered on March 13, 2000). The Judgment on Rule states, in pertinent part:
Easter Break
Easter is to be divided equally. For the years 2000 and 2001, the mother is to have the second half of the Easter holiday, which includes Easter Sunday. [sentence struck out by trial judge] Beginning in 2002, the father shall have the second half of the Easter holiday to include Easter Sunday and the mother shall have the first half of the Easter holiday. [sentence struck out by trial judge] The parties shall rotate halves each year thereafter.
Thereafter, Mr. Smith filed an amendment to his second Rule for Contempt and Modification (filed on May 18, 2000) alleging failure of Ms. Smith Schooler to make timely exchanges of the children and noting that the court had ordered mediation in July 2000 to resolve issues of visitation and transportation; however, Ms. Smith Schooler had denied him visitation during the mediation proceedings. In addition, he pointed out to the court that it had entered Judgment on Rule from the March 13, 2000 stipulation, which, as previously stated, adopted Mr. Smith's interpretation of the stipulation regarding Easter visitation.
The parties did resolve some issues in mediation; however, the issues of transportation, contempt and relocation were heard on October 13, 2000. First, the transportation issue involved only extended weekend visitations, or those weekends which included a Monday. The trial court ordered that Mr. Smith was to pick up the children from Hattiesburg at the beginning of the visitation period and that Ms. Smith Schooler was to travel to Monroe to retrieve the children at the end of the visitation period. The result of this ruling was to require Ms. Smith Schooler to take vacation time from work in order to travel to Monroe when the visitation lasted through Monday.
Second, the trial court imposed punishment on Ms. Smith Schooler for refusing Mr. Smith Easter visitation in the year 2000 and for refusing him any visitation for the period during which the parties were mediating, July 30, 2000, to October 13, 2000. She was ordered to pay all costs of the rules with attorney fees in the amount of $500. A fine in the amount of $150 was imposed along with a jail sentence of 15 days, which would be purged on payment of the above and compliance with all court orders for a period of 18 months. Mr. Smith was awarded ten extra visitation days to make up for lost days.
Third, the trial court declined to address the issue of possible future relocations. The parties had previously agreed that Ms. Smith Schooler could relocate the children when necessary; however, as with the other agreements, the parties disputed what that agreement really meant. In any event, the trial court found that the parties were actually asking it to render an advisory opinion on the previous agreement regarding relocation, which it could not do. This issue has not been raised on appeal. Ms. Smith Schooler appeals the trial court's rulings on contempt and transportation only.

*730 DISCUSSION

Constructive Contempt
As a threshold matter, we note that a judgment holding a party to a lawsuit in contempt of court is not a judgment from which an appeal may be taken. The aggrieved party's appropriate remedy in such a case is to apply for supervisory writs. City of Monroe v. Evans, 385 So.2d 912 (La.App. 2d Cir.1980); Pearce v. Dozier, 181 So.2d 432 (La.App. 2d Cir.1965); State v. Sampson, 498 So.2d 1145 (La. App. 3d Cir.1986); Slaughter v. Slaughter, 499 So.2d 1123 (La.App. 3d Cir.1986); Matter on Carter, 357 So.2d 1175 (La.App. 3d Cir.1978), writ denied, 358 So.2d 949 (La.1978). Although the majority of Louisiana jurisprudence holds that contempt judgments are not appealable, some cases have permitted a review on appeal where the appellate court was reviewing other related appealable matters. City of Monroe v. Evans, supra; Bruner v. Bruner, 373 So.2d 971 (La.App. 2d Cir.1979); Weeks v. Weeks, 349 So.2d 1008 (La.App. 2d Cir.1977); Lambert v. Adams, 347 So.2d 883 (La.App. 3d Cir.1977). Since Ms. Smith Schooler has raised the additional, appealable issue of transportation, we will review the correctness of the contempt judgment.
There were two bases for the trial court's finding Ms. Smith Schooler in contempt: (1) denial of Easter visitation and (2) denial of visitation during mediation. We will address each basis independently and in turn.
Ms. Smith Schooler challenges the judgment of contempt for denial of Easter visitation arguing that there was no "order of the court" in effect at the time of her alleged disobedience of such order. Simply put, she states that, because the written judgment reflecting the oral stipulation of the parties was not signed until after she denied Mr. Smith Easter visitation, there was no "order" to provide the basis of the contempt judgment. We find no merit in this argument.
Constructive contempt of court is defined as "willful disobedience of any lawful judgment, order, mandate, writ or process of the court." La. C.C.P. art. 224(2). A compromise read in open court with no evidence of the judge's acceptance, approval, participation or even hearing should not be the basis of a contempt citation, particularly in child custody matters. Hardy v. Hardy, 99-0283 (La.App. 4th Cir.9/22/99), 743 So.2d 810, writ denied, 99-3558 (La.2/11/00), 754 So.2d 945. Where, however, there is evidence of the judge's participation and approval of the process or stipulation and the statement of the judge that he would sign a judgment reflecting the stipulation once prepared, we find that such stipulation is valid and judicially enforceable. See Alagdon v. Guertin, 97-0235 (La.App. 4th Cir.10/1/97), 701 So.2d 480, writ denied, 97-2400 (La.12/12/97), 704 So.2d 1201. We conclude, therefore, that the stipulation entered in open court on March 13, 2000, could supply the basis for a finding of contempt. After close examination of the circumstances precipitating Ms. Smith Schooler's alleged violation of the stipulation, however, we find that the trial court erred in finding her in contempt for denial of Easter visitation.
In Lambert, supra, the court succinctly stated the following general rules regarding contempt proceedings:
First, the object and purpose of a contempt proceeding is to vindicate the authority and dignity of the court. It is not designed for the benefit of the litigants, even though infliction of punishment for contempt may inure to the benefit of the mover in the contempt rule. State ex rel. Duffy and Behan v. *731 Civil District Court for Parish of Orleans, 112 La. 182, 36 So. 315 (1904); Robertson v. Robertson, 258 So.2d 125 (La.App. 2d Cir.1972). Second, unless a litigant willfully disobeys a direct order of the court issued prior to the contempt rule, he should not be held in contempt, even if his acts tend to frustrate the opposing litigant. State ex rel. Duffy and Behan, supra. Third, proceedings for contempt must be strictly construed, and the policy of our law does not favor extending their scope. Roy v. Berard, 227 La. 86, 78 So.2d 519 (1955); Junius Hart Piano House v. Ingman, 119 La. 1017, 44 So. 850 (1907). Fourth, as a general rule, contempt proceedings should not be resorted to where other specific remedies are provided by law. State ex rel. Duffy and Behan, supra; In re State ex rel. Hero, 36 La. Ann. 352 (1884); Junius Hart Piano House v. Ingman, supra.

Further, in order for a court to find a person guilty of constructive contempt, it is necessary to find that he or she violated the order of the court intentionally, knowingly and purposefully, without justifiable excuse. Midyett v. Midyett, 32-208 (La. App. 2d Cir.9/22/99), 744 So.2d 669; Pearson v. Municipal Fire & Police Civil Service Board for City of Shreveport, 535 So.2d 515 (La.App. 2d Cir.1988), writ denied, 539 So.2d 634 (La.1989). In making this determination, the trial court is vested with great discretion and its decision will only be reversed when the appellate court can discern an abuse of that discretion. Stephens v. Stephens, 30,498 (La.App. 2d Cir.5/13/98), 714 So.2d 115.
Review of the record in the case sub judice reveals little evidence that Ms. Smith Schooler willfully and purposely defied an order of the court regarding Easter visitation. Mr. Smith offered no more than his own testimony that the denial of visitation was in willful disobedience of an order of the trial court and that Ms. Smith Schooler took the children to Florida for Easter vacation rather than allowing him visitation. On the other hand, Ms. Smith Schooler provides a persuasive argument that her interpretation of the stipulation was that the parties would not "share" the Easter break until the youngest child was old enough to understand that there is no Easter bunny. The record supports that the parties had been following the practice of the children being with their mother on Easter for that reason. Further, we find convincing the argument that the parties would not have agreed to transport the children over such a long distance in such a short time, which would be the result if the parties were to "share" a three-day Easter break. In addition, there is ample evidence in the record supporting Ms. Smith Schooler's assertion that the parties disagreed as to the intended effect of the stipulation until the actual judgment was signed which adopted Mr. Smith's interpretation of the stipulation.[1] (Recall that the actual judgment was not signed until after the denial of Easter visitation occurred.) In short, without deciding which party was correct in its interpretation of the stipulation regarding Easter break, we find that Ms. Smith Schooler presented a justifiable excuse for denying Mr. Smith Easter visitation with the children.
This court reached a similar conclusion in the recent case of Lutke v. Lutke, 33,001 (La.App. 2d Cir.2/1/00), 750 So.2d 512. In *732 Lutke, we reversed the trial court's finding of contempt on the part of the ex-wife, where the ex-husband presented no evidence bearing on the willfulness of the ex-wife's failure to pay child support, but where the ex-wife presented much evidence showing that her life circumstances rendered her unable to pay. We find, therefore, that the trial court, in the case sub judice, was clearly wrong in giving such little weight to Ms. Smith Schooler's defense against the charge of willful disobedience of the judgment of the court.
We will now address the second basis for the contempt ruling, denial of visitation during mediation. In July 2000, the trial court ordered the parties to mediate custody and visitation issues, signing an order to that effect on August 3, 2000. Shortly thereafter, mediation commenced; however, as previously stated, Ms. Smith Schooler refused Mr. Smith visitation with the children during the entire mediation process. The parties' stipulation, memorialized in the August 3, 2000 judgment providing for Mr. Smith's visitation with the children, was in effect and had not been modified in any way during the time the parties were mediating.
Unlike the issue of Easter visitation, Mr. Smith presented evidence of Ms. Smith Schooler's willful disobedience of the above judgment. Mr. Smith testified that he contacted Ms. Smith Schooler's attorney seeking visitation. The record contains letters which support Mr. Smith's testimony. In addition, Ms. Smith Schooler admitted that the mediator had spoken directly with her on more than one occasion in an effort to facilitate visitation. We do not find credible Ms. Smith Schooler's denial of having received any requests for visitation during this time period. We are also not persuaded by Ms. Smith Schooler's argument that she believed that, since visitation issues were to be addressed in mediation, she was no longer required to follow the above judgment. As previously stated, there had been no modification of the judgment whatsoever; it was in full force and effect. On this basis for contempt, we find no error in the trial court's ruling.

Transportation
Regarding the transportation issue, the August 3, 2000 judgment provided:
6. Extension of Holiday or Weekend

Whenever weekend visitation in favor of the father joins Labor Day or Memorial Day or any other holiday on which the children are out of school, the father shall have the additional holiday as part of the weekend visitation to enjoy; that is, if the weekend is Saturday and Sunday and Monday is a holiday, he would pick up that holiday, be it Labor Day, Memorial Day or any other holiday and be obligated to return the children at 6:30 p.m. at the close of the specific holiday. (Emphasis added).
During mediation, the parties were successful in agreeing on certain visitation issues, including a different weekend visitation schedule due to Ms. Smith Schooler's move with the children to Hattiesburg. The parties, however, were unable to agree on the transportation of the children on extended weekends that do not include a work holiday for Ms. Smith Schooler. This issue was heard by the trial court on October 13, 2000. As previously stated, the trial court found that the parties should bear transportation equally on all visitations, including extended weekends, and that Ms. Smith Schooler would have to make appropriate arrangements for retrieval of the children from Monroe. The effect of the judgment is that, on those particular extended weekends (of which, according to the record, there are only three or four per year), Ms. Smith Schooler *733 would have to take one half day off of work to retrieve the children from Monroe and return with them to Hattiesburg.
Ms. Smith Schooler argues that this ruling is contrary to the August 3, 2000 judgment and that there has been no material change in circumstances shown to warrant such a modification of that judgment. Further, she submits that the evidence adduced at the October 13, 2000 hearing clearly showed that it would not be a burden on Mr. Smith to return the children at the close of extended weekends because he "is his own boss" and would suffer no employment-related repercussions from missing work. On the other hand, she was required to take vacation time to retrieve the children and her employment relationship would be jeopardized by such requirement. We are not persuaded by either of these arguments.
Transportation of the children for visitation is an issue to be addressed anytime there is a change in visitation schedules or arrangements. The parties significantly modified the weekend visitation schedule during the mediation process; and, therefore, transportation issues were necessarily raised. Unable to agree on this issue, the parties sought a ruling from the trial court. On this record, we cannot say that the trial court's conclusion was manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). There is a reasonable basis for the finding that each party should bear the burden of transportation. For example, Mr. Smith will have to make arrangements to pick up the children every Friday afternoon for weekend, summer and holiday visitations, not only extended weekends. We do not find it unreasonable to require Ms. Smith Schooler to miss one half day of work three or four times per year to pick up her children from Monroe.

CONCLUSION
For the foregoing reasons, the finding of the trial court that Ms. Smith Schooler was in constructive contempt of the stipulation regarding Easter visitation is reversed; however, the finding that she was in constructive contempt of court by denying Mr. Smith visitation during mediation is affirmed. The remainder of the judgment is affirmed. Costs are assessed equally to the parties.
REVERSED IN PART; AFFIRMED IN PART.
NOTES
[1] This court has recognized in dicta that, in order to support a finding of constructive contempt, a judgment must clearly direct what a party is or is not to do. City of Monroe v. Evans, supra. In this case, since there was a dispute over the interpretation of the Easter visitation provision, it could be said that the stipulation did not clearly direct the parties in what they must do in that regard.