945 So.2d 189 (2006)
STATE of Louisiana, in the Interest of J.M., Plaintiff-Appellee
v.
Theodore J. MALANT, Defendant-Appellant.
No. 41,670-JAC.
Court of Appeal of Louisiana, Second Circuit.
December 13, 2006.
*190 Michael David Cox, for Appellant.
W. Eugene Golden, Shreveport, for Appellee, J.M.
David K. Handelman, Shreveport, for Appellee, Robin Brooks.
Audie L. Jones, Shreveport, for Appellee, State of Louisiana, DOSS.
Before WILLIAMS, MOORE and LOLLEY, JJ.
WILLIAMS, Judge.
The father, Theodore Malant, appeals a juvenile court judgment finding that the minor child, J.M., is a child in need of care and maintaining custody of the child with the Louisiana Department of Social Services ("DSS"), subject to the parents' right of unsupervised visitation every other weekend. For the following reasons, we affirm.

FACTS
Theodore Malant ("Ted") and Robin Brooks ("Robin") are the parents of the minor child, J.M., who was born on May 23, 2000. The parents were never married to each other and never lived together. The record shows that in 1991, Ted was convicted of sexual assault of a child in Texas and was sentenced to seven years' probation with a deferred adjudication. The parents were originally granted joint custody, and Robin was awarded domiciliary parental status. Shortly after the original custody hearing, problems arose. J.M. told Ted that Robin had bitten him and the child began to act aggressively with other children. In November 2003, following the child's visit with Robin, Ted took J.M. to Willis-Knighton Medical Center in Bossier City, Louisiana, because he had a large bruise on his forehead, which was diagnosed as a "closed head injury."
In December 2004, J.M., who was four years old, told Ted that Robin and her brother, Brad Fairchild, had touched his private areas with their fingers and had hurt him. The child repeated these statements to staff members at the Gingerbread House. Ted filed suit seeking injunctive relief (a protective order) against Robin, alleging sexual misconduct and asking for a change in the existing custody status. Shortly thereafter, the district court issued an interim order granting Ted custody and domiciliary status during the school year (75% of the time) and granting Robin the same during the summer months (25% of the time). Robin was restricted to "supervised visitation" at that point. In April 2005, the court rendered judgment in which Ted was designated the domiciliary parent during the school year *191 and Robin was designated the domiciliary parent during the summer months. The non-custodial, non-domiciliary parent was given visitation with J.M. for three hours every Tuesday evening and weekends alternated between parents. In addition, the court ordered that Robin's brother was to have no contact whatsoever with the child.
In July 2005, Ted filed a "motion for contempt" in Bossier District Court alleging that J.M. was being beaten by Robin and that she was "once again condoning her brother's sexual molestation of the minor child." Robin responded with motions for change of custody, contempt and sanctions. After a hearing, the court rendered judgment maintaining joint custody between the parties, declaring that neither parent was designated as the domiciliary parent and changing custody so that J.M. spent the school year with Robin and the summer with Ted. The judgment was silent on the issues of contempt and sanctions. On appeal, this court concluded that the trial court had erred in excluding the physician testimony offered by the father, reversed the court's award of domiciliary custody to the mother and remanded for further proceedings. Malant v. Brooks, 41,133 (La.App.2d Cir. 5/19/06), 929 So.2d 297 (unpublished).
In January 2006, while the prior appeal was pending, Ted filed a complaint with DSS, Office of Community Services in Caddo Parish, alleging additional physical and sexual abuse of the child by Robin. DSS filed an affidavit alleging physical abuse by the child's mother and emotional abuse by the father. The juvenile court issued an instanter order placing J.M. in state custody. At the adjudication hearing, the parties stipulated that J.M. was a child in need of care.
After a disposition hearing in March 2006, the juvenile court ordered that the child remain in state custody, finding that both parents had abused the child, as defined in LSA-Ch.C. art. 603(1)(a). Specifically, the court found that the mother had repeatedly perpetrated physical abuse upon the child, including a severe head injury in November 2003, for which she failed to seek medical attention. The court further found that the father had inflicted emotional and mental abuse upon the child by alienating the child from his mother, coaching the child to exaggerate abuse by the mother, and subjecting the child to forensic examinations and interviews concerning allegations of abuse without the involvement of professionals skilled in examining or questioning children.
After a case review hearing in May 2006, the juvenile court issued findings that J.M. continued to be a child in need of care, that DSS had made reasonable efforts to finalize a permanent plan of reunification and that this plan was in the best interest of the child. In June 2006, the court rendered judgment maintaining custody of the child with DSS, approving the case plan for the parents and the child, and awarding the mother and father "unsupervised visitation with the child every other weekend from Friday 5:00 pm to Sunday 5:00 pm." The father appealed this judgment.
On August 8, 2006, while this appeal was pending, the juvenile court held another case review hearing and rendered a "judgment modifying disposition," vacating the state's custody of J.M. and placing custody of the child with the father, subject to the mother's visitation "every other weekend from Friday at 3:00 p.m. until the start of school Monday morning and Thursday on the week where there is no weekend visitation from 3:00 p.m. until the start of school Friday." Subsequently, the state filed a motion to dismiss the appeal on the grounds that the May 2006 judgment was moot, since DSS no longer has custody of *192 J.M. and the father is no longer obligated to complete a case plan.[1]

DISCUSSION
In two assignments of error, the father contends the trial court erred in making certain evidentiary rulings. The father argues that the court should have granted his motion to strike any mention of his prior Texas conviction as irrelevant to the issue of the parents' treatment of the child in this case.
In a case review hearing, the court shall consider all relevant evidence offered by the parties and may limit the admissibility or weight of any evidence which it deems unreliable or cumulative. LSA-Ch.C. art. 699. The Legislature has enacted special rules which provide for a relaxed evidentiary standard to be applied in child custody determinations in order to promote the purposes of the proceeding. LSA-C.E. art. 1101(B)(2); Folse v. Folse, 98-1976 (La. 6/29/99), 738 So.2d 1040. In enacting Article 1101(B), the Legislature has concluded that the best interests of children are not served by strict application of the rules of evidence. Thus, the trial judge has been given very broad discretion regarding the admissibility of evidence in order that the intended purpose of the proceeding might be served. Folse, supra.
In his brief, the father argues that evidence of his deferred adjudication in Texas should have been excluded because the information was irrelevant to the allegations of abuse against the parents in this case and was unduly prejudicial to the father. However, the trial court could reasonably have found that the father's prior conviction was a relevant consideration in assessing whether returning custody to the parents would serve the best interests of the child. In addition, the father's insistence during his testimony and psychological evaluation that he had done nothing wrong in Texas, despite having pled guilty to sexual assault of a child, was a relevant factor in the court's evaluation of the father's credibility. Thus, the father's argument lacks merit.
The father also argues that he was denied a fair hearing by the court's refusal to allow him to call the child as a witness to contradict the hearsay testimony of other witnesses. The trial court has discretion to admit or exclude witness testimony in furtherance of the public policy favoring the protection of children's welfare. Folse, supra.
Here, Dr. Susan Vigen, a psychologist, testified that the repetitive questioning of the child by the father, his attorney and the state could have caused the child to doubt his own memory of what actually occurred and that the parents' contentious custody dispute had placed the child under heavy pressure to align himself with one parent or the other. Both Dr. Vigen and Dr. Deborah Brown, a certified counselor, opined that the previous interrogations by the father's attorney had been psychologically abusive to the child and that requiring the child to testify in court would further impair the child's emotional health. After hearing the testimony, the trial court found that having the child testify would cause irreparable and unreasonable harm to the child. Based upon this record, we cannot say the trial court abused its discretion in refusing to call the child as a witness. The assignments of error lack merit.
*193 Emotional Abuse of the Child
In two assignments of error, the father contends the trial court erred in finding that he emotionally abused his son. The father asserts that the evidence does not support the court's findings that he coached the child to exaggerate the physical abuse by the mother, repeatedly subjected the child to forensic examinations for alleged abuse and alienated the child from his mother.
In reviewing factual findings of the trial court, the issue for the appellate court is not whether the trier of fact was wrong, but whether the findings are reasonable in light of the record as a whole. Foster v. Clarendon National Insurance, 32,646 (La.App.2d Cir. 3/1/00), 753 So.2d 968. In custody cases, the paramount consideration is always the best interest of the child. LSA-C.C. art. 134.
Initially, we note that the findings of fact which the father alleges as error were issued on April 24, 2006, pursuant to a judgment of disposition signed on April 3, 2006. The father failed to file a timely appeal of this judgment. Thus, the issues raised in the father's brief are not properly before this court. Even if the assignments of error asserted by the father were considered on review, they would lack merit.
The record contains the psychological report of the father prepared by Dr. Daniel Lonowski, a psychologist, who administered personality tests and interviewed the father. Dr. Lonowski testified that the test results indicated that the father's personality type tended to be immature, egocentric and self-centered, that he was deceptive in answering questions and gave defensive responses. Dr. Lonowski opined that the father "likely" had overreacted to some of the child's injuries and had coached his son to make adverse comments about his mother to protect him from perceived abuse. Dr. Lonowski recommended that the father participate in insight-oriented counseling to gain understanding of the way his personality disorder affected his social decision-making.
In his testimony and brief, the father acknowledged that he often videotaped the child preparing for visits with his mother to show that the child did not want to go. The videotapes showed that the father often referred to the child's mother as "Robin" and said that he could not prevent the child from going on the visits. The father stated that he began taking photographs of various bruises, scratches and marks on the child after almost every visit with the mother in an attempt to document possible physical abuse while in her care.
Sandi Davis, the court-appointed counselor, testified that the father began to bring the child to her office on a regular basis to show alleged bruises or injuries, but that often such marks were minor. Davis stated that she had repeatedly asked the father to encourage the child to refer to his mother as "mom," but the father did not cooperate. Davis testified that this behavior was alienating the child from the mother and was confusing the child. Davis opined that the extensive interviews conducted and numerous photographs taken of the child over a significant period of time had emotionally damaged the child.
As pointed out by the father, Dr. Vigen's March 2006 psychological assessment of the child noted that the responses of the child's foster mother and teacher in a behavioral questionnaire did not indicate that the child was having attentional, behavioral or emotional difficulties. However, Dr. Vigen also reported the child's statements that his father had told him he could go to Six Flags and Disney World if the father received custody and that his father brought him something he wanted at every visit. Dr. Vigen wrote that the child's *194 statements suggested that he had been influenced in his preference to live with the father by the promises of trips and the items given to the child on visits. Dr. Vigen reported that when directly questioned about whether either parent had "touched him in a wrong way," the child said they had not and denied being touched on his private parts by anyone else. Dr. Vigen concluded that the child remained upset by the continued conflict between his parents and that he needed counseling which provided emotional support.
The juvenile court heard the extensive testimony in this case and weighed the credibility of the witnesses. Contrary to the father's assertions, the record contains sufficient evidence to support the court's findings that the father's behavior contributed to the child's emotional and psychological harm as described by the psychologists, that he alienated the child from his mother and that the father allowed his attorney to conduct several questionable interviews of the child without involving properly trained professionals.
Consequently, we cannot say that the juvenile court erred in concluding that J.M. was a child in need of care and in ordering that the child remain in state custody with visitation by the parents. The assignments of error lack merit.

CONCLUSION
For the foregoing reasons, the juvenile court's June 2006 judgment is affirmed. Costs of this appeal are assessed to the appellant, Theodore Malant.
AFFIRMED.
NOTES
[1] This court denied the motion to dismiss the appeal. State in the Interest of J.M., 41,670 (La.App.2d Cir. 9/26/06).