946 So.2d 302 (2006)
STATE of Louisiana in the Interest of J.M., Plaintiff-Appellant
v.
Robin BROOKS, Defendant-Appellant.
No. 41,952-JAC.
Court of Appeal of Louisiana, Second Circuit.
December 20, 2006.
*303 David Handelman, Counsel for Appellant, Robin Brooks.
Pam Harper-Jacobs, Audie L. Jones, for Appellant, State of Louisiana.
Michael Cox, for Appellee, Ted Malant.
W. Eugene Golden, for J.M.
Before BROWN, STEWART, and CARAWAY, JJ.
BROWN, Chief Judge.
Robin Brooks, along with the Department of Social Services, has appealed from a juvenile court judgment removing J.M. from the custody of the State of Louisiana and awarding custody to his father, Ted Malant. In addition, appellants take issue with the juvenile court's lifting of a protection order prohibiting the father from making recorded interviews with the child. For the following reasons, we affirm.

Facts and Procedural Background
On January 12, 2006, the juvenile court in Caddo Parish issued an instanter order removing the minor child, J.M., from the custody of his mother, Robin Brooks, and placing him in the custody of the State Department of Social Services, Office of *304 Community Services ("OCS").[1] At this time, the child was six years old and living in Caddo Parish with his mother. The father lived in Bossier Parish and had made repeated allegations of sexual and physical abuse by the mother of the child.
The juvenile court held a custody hearing on January 18 and 19, 2006. The court continued J.M. in the custody of OCS, pending the filing of a petition to adjudicate the child in need of care, which was filed on February 15, 2006. The matter came to trial on March 3, 2006, and a disposition hearing was held on March 27, 2006, to determine the future course of the case. OCS submitted a case plan which was based on psychological evaluations of the parents and child. The juvenile court maintained custody of J.M. with the OCS and ordered the parents to comply with the case plan in order to "facilitate the safe return of J.M. to the family."
Thereafter, on August 8, 2006, the court found that both parents had substantially completed their case plans and that reunification with his parents would be appropriate and in the best interest of the child. The court further observed that J.M., who was six years old, had been the subject of a custody dispute for the majority of his life, had been extremely unhappy in foster care, and needed a respite from the repetitive uncertainty as to where he would live.
The juvenile court awarded custody to the father, with Robin being given visitation every other weekend, plus one evening in between the weekend visitations. The juvenile court considered past circumstances, including the sexual abuse of J.M. by Brad Fairchild, the mother's brother, physical abuse by the mother, her past failure to provide immediate medical treatment or appropriate parental concern after J.M. suffered a serious head injury, J.M.'s insecurity around his mother, and J.M.'s strong desire to live with his father. We note that the father had a 1990 conviction for sexual assault of a minor in Texas.
The trial court ordered the parents to be civil to each other and not to demean the other parent in front of J.M. The trial court continued the protective order but specifically omitted the prohibition of the father engaging in forensic photography, videography, and audiotaping of the child. Further, the trial court ordered that J.M. was not to be taken within 300 yards of Brad Fairchild, Robin's brother. The judgment was signed on August 17, 2006.
It is from this judgment that Robin and the Department of Social Services, Office of Community Services, have appealed.

Discussion
Custody
Appellants first argue that the trial court committed manifest error by awarding custody to the father based upon its finding that he had substantially complied with the terms of his case plan and by finding that he no longer posed a risk of abuse toward J.M.
The paramount consideration in any determination of child custody is the best interest of the child. In the Interest of J.B.A. and J.B.A., 40,567 (La.App.2d Cir.10/26/05), 914 So.2d 654. The manifest error standard is a strict one, especially in custody determinations, where deference to the trial court's factual findings is due. For an appellate court to reverse a trial court's custody determination, it must find that the record does not supply a reasonable factual basis for the ruling, and that the record establishes that the ruling is manifestly wrong. Id.
*305 A trial court may give whatever weight it deems appropriate to the testimony of any and all witnesses, including that of experts. Curole v. Curole, 02-1891 (La.10/15/02), 828 So.2d 1094.
Nowhere in the record or on appeal has the mother either referred to any evidence or set forth an argument that she did not physically abuse the child. The juvenile court determined from witness testimony and medical expert opinion that the abuse occurred. In addition, the lower court found that the father had not harmed J.M. and was not likely to pose a danger to J.M. in the future; indeed, all of the experts agree that J.M. showed great trust and affection for his father.
The juvenile court, however, found that the father's documenting, via visual and audio recordings, examples of the abuse suffered by J.M. at the hands of his mother in an effort to exacerbate J.M.'s preexisting sense of insecurity with his mother was inappropriate. The juvenile court correctly warned both parents against any further attempts to alienate J.M. from the other parent. The court found that the best interest of the child is for J.M. to live with his father but subject to visitation with his mother to restore both J.M.'s sense of security with her and life in a stable and safe family home. This judgment is based on the evidence, is clearly in the best interest of J.M., and we find no manifest error on this record.
Protection Order
Appellants also argue that the juvenile court erred by not including a provision in its protective order prohibiting the father from creating photographs, video records, or audio records of or interviews with J.M.[2]
As noted above, the juvenile court gave both parents a strong warning against any more private interviews with J.M. with the intent to alienate the other parent from the child. Further, J.M. is no longer in his mother's sole custody. These being the facts, the father could only weaken his argument for sole custody of J.M. by violating such a provision, and therefore we cannot say that the juvenile court committed manifest error in omitting this provision from the protection order.[3]

Conclusion
For the reasons stated above, we affirm the juvenile court's judgment granting Ted Malant custody of J.M. Costs of this appeal are assessed to appellant, Robin Brooks.
NOTES
[1] The mother had custodial rights pursuant to a November 3, 2005, judgment rendered in the 26th Judicial District Court for Bossier Parish. The father appealed that judgment and this court reversed and remanded in an unpublished opinion. Malant v. Brooks, 41,133 (La.App.2d Cir.05/19/06), 929 So.2d 297 (unpublished).
[2] The protection order put into effect of May 26, 2006, included such a provision.
[3] Ted asked this court to amend that part of the juvenile court's judgment which granted Robin unsupervised visitation with J.M. Though he filed an opposition brief to Robin's appeal, he did not file an answer; thus we are not permitted to address this argument due to the restrictions of La. C.C.P. art. 2133. However, we note no abuse of the trial court's discretion in this respect.