972 So.2d 1197 (2007)
STATE of Louisiana In the Interest of J.M., Plaintiff-Appellee
v.
Robin BROOKS and Ted Malant, Defendant-Appellant.
No. 42,846-JAC.
Court of Appeal of Louisiana, Second Circuit.
December 5, 2007.
*1198 Michael D. Cox, Lake Charles, for Appellant, Theodore J. Malant.
Legal Services of North, Louisiana, Inc. by David K. Handelman, Margherita McWilliams, Shreveport, for Appellee, Robin Brooks.
Wilbert Pryor, for J.M.
Before BROWN, STEWART and GASKINS, JJ.
GASKINS, J.
The appellant, Ted Malant, appeals from a decision by the juvenile court denying his motion to have Robin Brooks found in contempt. The contempt issue arose out of the court's order regarding custody issues concerning the couple's child, J.M. For the following reasons, we affirm.

FACTS
Ted Malant and Robin Brooks are the parents of J.M., born May 23, 2000. The parties were never married. They have been before the court on several other occasions.
Mr. Malant was convicted of sexual assault of a child in Texas in 1991 and was placed on probation for seven years. The parties originally had joint custody of J.M. and Ms. Brooks was named domiciliary parent. This was followed by complaints of abuse by J.M., claiming that his mother bit him, inflicted a closed head injury and, along with her brother, touched him inappropriately. Mr. Malant filed for a change of custody. In 2005, a judgment was entered designating Mr. Malant as domiciliary parent during the school year and granting the same to Ms. Brooks during the summer. The judgment set forth a visitation schedule for the noncustodial parent and ordered that Ms. Brooks' brother have no contact with the child.
In 2006, Mr. Malant filed a motion for contempt alleging that Ms. Brooks had again beaten the child and had allowed her brother to be around J.M. Joint custody was maintained and no decision was made as to contempt. That judgment was appealed by. Mr. Malant. In 2006, while that ruling was on appeal, Mr. Malant filed a complaint with the Louisiana Department of Social Services (DSS) alleging physical *1199 and sexual abuse by Ms. Brooks. DSS filed an affidavit asserting physical abuse by Ms. Brooks and emotional abuse by Mr. Malant. J.M. was taken into state custody and was adjudicated a child in need of care. The child was in foster care for several months.
This court ruled on Mr. Malant's appeal, holding that the juvenile court did not err in considering his conviction in Texas, in refusing to allow him to call J.M. as a witness in the proceedings, in determining that Mr. Malant emotionally abused the child and in finding that the child was in need of care. State ex rel. J.M. v. Malant, 41,670 (La.App.2d Cir.12/13/06), 945 So.2d 189.
In August 2006, while the appeal in the prior case was pending, the juvenile court held a case review and modified the judgment, removing J.M. from state custody and placing him in the custody of Mr. Malant, with visitation to Ms. Brooks. The judgment included a protective order specifying that the parents were not to abuse or neglect the child. Ms. Brooks was ordered not to use corporal punishment on the child, not to sleep with him or to bathe him, and not to allow her brother to have any contact with the child. The custody judgment also ordered that the parents are entitled to speak with the child by telephone at reasonable times and intervals when the child is with the other parent. The court specified that Mr. Malant was responsible for ensuring that the minor child attend counseling with Dr. Susan Vigen for as long as Dr. Vigen deems necessary.
The DSS and Ms. Brooks appealed that decision. See State ex rel. J.M. v. Brooks, 41,952 (La.App.2d Cir.12/20/06), 946 So.2d 302. This court found that the juvenile court did not err in granting custody to Mr. Malant and in lifting a protective order prohibiting the father from making recorded interviews with the child for purposes of showing that Ms. Brooks was abusing the child.
In January 2007, Mr. Malant filed the present rule to show cause why Ms. Brooks should not be found to be in contempt of the protective order. Mr. Malant claimed that Ms. Brooks was sleeping with the child, not permitting phone calls, threatening to beat the child if he did not misbehave and perform poorly in school, and threatening to return him to foster care.
In February 2007, Ms. Brooks filed her own rule for contempt, alleging that Mr. Malant has failed to abide by the court's custody award which required Mr. Malant to ensure that the child attend counseling sessions with Dr. Vigen.
When the rules for contempt were originally brought before the court for hearing, Mr. Malant tried to introduce evidence of other incidents not alleged in his rule for contempt. The matter was continued by the trial court. Mr. Malant filed an amended rule to show cause why Ms. Brooks should not be held in contempt. He alleged that on February 3, 2007, Ms. Brooks hit the child in the groin. According to Mr. Malant, the child had a cold and he took him to a doctor on February 5, 2007. During that appointment, the child stated that Ms. Brooks hit him in the groin. Later, while drying J.M.'s hair, Mr. Malant noted a small bruise on the child's head. J.M. claimed that Ms. Brooks hit him in the head while he was . . . sleeping. Mr. Malant alleged that this occurred on February 16, 2007. He took the child to the doctor on February 21, 2007.
At the conclusion of the hearing, the juvenile court denied the rule to show *1200 cause and the amended rule to show cause for contempt filed by Mr. Malant against Ms. Brooks. On April 17, 2007, the judgment was filed denying Mr. Malant's claims. Mr. Malant appealed.

CONTEMPT
Mr. Malant argues that the juvenile court erred in not finding that the child was intentionally abused by his mother when she slept in the same bed with him, and hit him in the head and the groin. He also argues that the juvenile court erred in failing to consider the best interest of the child when it denied the motion for contempt against Ms. Brooks. These arguments are without merit.

Legal Principles
The wilful disobedience of any lawful judgment or order of the court constitutes a constructive contempt of court. La. C.C.P. art. 224(2). To find a person guilty of constructive contempt, it is necessary to find that he or she violated the order of the court intentionally, knowingly, and purposely, without justification. In re S.L.G., 40,858 (La.App.2d Cir.1/25/06), 920 So.2d 363; Midyett v. Midyett, 32,208 (La. App.2d Cir.9/22/99), 744 So.2d 669.
The trial court is vested with great discretion in determining whether a party should be held in contempt for disobeying the court's order and its decision will only be reversed when the appellate court can discern an abuse of that discretion. In re S.L.G., supra; Midyett v. Midyett, supra; Martin v. Martin, 37,958 (La.App.2d Cir.12/10/03), 862 So.2d 1081, writ not considered, XXXX-XXXX (La.3/12/04), 869 So.2d 807. A proceeding for contempt in refusing to obey the court's orders is not designed for the benefit of the litigant, though infliction of a punishment may inure to the benefit of the mover in the rule. The object of the proceeding is to vindicate the dignity of the court. Smith v. Smith, 35,378 (La.App.2d Cir.9/26/01), 796 So.2d 726; In re S.L.G., supra. Proceedings for contempt are strictly construed and extending their scope is not favored. Arrington v. Arrington, 41,012 (La.App.2d Cir.4/26/06), 930 So.2d 1068; Smith v. Smith, supra
La. C.C. art. 136 provides in pertinent part that a parent not granted custody or joint custody of a child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would not be in the best interest of the child. Jurisprudence emphasizes that the best interest of the child is the sole criterion for determining a noncustodial parent's right to visitation. Because each case depends on its own facts, the determination regarding visitation is made on a case-by-case basis. Great weight is given to the trial court's determination, and the court's judgment will not be overturned unless a clear abuse of discretion is shown. Smith v. Smith, 41,871 (La.App.2d Cir.1/24/07), 948 So.2d 386, writ not considered, XXXX-XXXX (La.4/20/07), 954 So.2d 149.

Discussion
According to Mr. Malant, the child has been alleging physical abuse by the mother from the time he was able to speak in short phrases. Mr. Malant outlined the extensive court proceedings in this matter and maintained that he has consistently documented, through photos and physicians' reports, the abuse by Ms. Brooks. He contends that in the present matter, the court had before it for the first time the child's own testimony to prove abuse by the mother. Mr. Malant noted that Ms. Brooks chose not to testify at the hearing.
Mr. Malant maintains that the juvenile court in this matter failed to consider the *1201 best interest of the child in allowing the mother unfettered access to the child. He contends that the juvenile court should have found the mother in contempt and should have ordered that she have only supervised visitation with the child. He claims that the prejudice against him by prior counselors has been so severe that greater injury has been caused to J.M. Mr. Malant argues that every time a legal action has been instituted, "J.M. has been given back to his mother only to be hurt again and again and again." Mr. Malant urges that the best interest of the mother continues to take precedence over the best interest of the child.[1]
The issues before the court for decision were whether Ms. Brooks violated the court's custody order by refusing to allow the child to speak on the phone with Mr. Malant, sleeping in the bed with the child, and hitting the child in the groin and head on separate occasions. Mr. Malant testified that the issue with phone calls improved after he filed his original rule alleging contempt. In a subsequent hearing, the juvenile court ordered Mr. Malant to schedule a counseling session for the child immediately, thereby addressing Ms. Brooks' allegations seeking to have Mr. Malant found in contempt for failing to take the child to counseling.
When Mr. Malant was questioned at trial about Ms. Brooks sleeping in the bed with the child, it was revealed that the child told Dr. Vigen that he had gotten into the bed with his mother on one occasion. Mr. Malant speculated that the child was threatened to make that statement to Dr. Vigen.
Much of the evidence at trial concerned the allegations of physical abuse by Ms. Brooks against J.M. The child's physician, Dr. William Maranto, testified by deposition that on February 5, 2007, the child was brought in for treatment of a cold. Mr. Malant told the doctor that Ms. Brooks hit the child in the groin and asked that J.M. be examined for bruises. The doctor asked J.M. about the allegation and the child stated that his mother hit him. The doctor's examination revealed only some tenderness in the area. There was no bruising or other objective findings of injury or trauma.
On February 21, 2007, the child was again brought to Dr. Maranto, based on J.M.'s complaint that his mother hit him in the head several days before. The doctor detected a very faint bruise on the child's head. The physician concluded that whatever trauma was sustained was not major. Dr. Maranto stated that Mr. Malant seemed very concerned for the child. The child had a very happy affect. The doctor said the encounter was very businesslike and not "super emotional."
After the complaint that Ms. Brooks hit him in the groin, J.M. was interviewed at Gingerbread House by a forensic interviewer who testified at the hearing. She said the child related that he called Ms. Brooks by her given name, which angered her, and she hit him in the groin. The interviewer noted that the child recited his version of the incident by rote. The interviewer testified that J.M. was very serious and straightforward during the interview. He made a two- or three-sentence statement about what happened, but could not answer questions about the surrounding *1202 details. The interviewer stated that she was very concerned that the child had been coached as to what to say.
A letter from Dr. Vigen, dated March 19, 2007, was filed into evidence at the hearing. Dr. Vigen observed that J.M. is noncompliant and highly oppositional at the start of visits with Ms. Brooks and he is much better behaved with Mr. Malant. According to Dr. Vigen, J.M. is untruthful. On one occasion, the child told Mr. Malant that he stayed at home all day with Ms. Brooks when, in fact, he went skating and out to eat. According to Dr. Vigen, J.M. tells Mr. Malant that Ms. Brooks is lying when she says that he has been good at her house. Dr. Vigen stated that J.M. does not want Mr. Malant to, think that he has positive feelings for his mother. Dr. Vigen opined that it is likely that J.M. is accusing Ms. Brooks of hitting him in the hope that visitation will be stopped.
Mr. Malant testified that he did not take the child to court-ordered counseling in spite of all the problems he claimed were occurring. He said that he was having trouble getting in touch with Dr. Vigen to set up counseling sessions. He also claimed that he did not report any of the alleged incidents of abuse to child protection services because he thought Gingerbread House would report the incidents and because he did not want the state to take custody of the child again.
The juvenile court allowed J.M. to testify. The judge had to instruct the child not to look at Mr. Malant's attorney when answering questions. He questioned the child with only the attorneys for the parties present. The child repeatedly recited that he did not want to go to his mother's house anymore because she beats, bites, and chokes him. The child stated that the last time Ms. Brooks hit him was when she struck him in the groin. The prior testimony shows that this incident was reported prior to the alleged blow to the head.
J.M. related that he has a good relationship with Ms. Brooks' foster mother, Joanne Ross, with whom she lives, and whom the child calls "Gammy." He stated that, in spite of the alleged abuse by his mother, he never told Gammy about any of it. J.M. seemed somewhat confused when asked about why he never tells his grandmother about the alleged abuse. The child insisted that he hated his mother and wished that she was in jail.
Ms. Ross denied any abuse of the child by Ms. Brooks and stated that if the abuse really occurred, J.M. would tell her about it. Ms. Ross said that the child seems glad to see them on visitation, but that Ms. Brooks is afraid to try to discipline the child.
Based upon the evidence and testimony presented at the hearing, we do not find that the trial court erred in denying Mr. Malant's request that Ms. Brooks be found in contempt of court for failure to abide by the court's order for custody and visitation. Also, the juvenile court did not fail to consider the best interest of the child in its decision. The juvenile court judge heard the testimony in this matter and personally questioned J.M. about the allegations against Ms. Brooks. The record shows that Mr. Malant has a history of encouraging a poor relationship between Ms. Brooks and J.M. According to Dr. Vigen, the child does not want Mr. Malant to think he has any positive feelings for his mother. Mr. Malant encourages the child to call Ms. Brooks by her first name instead of referring to her as his mother, and has the child call his wife "Mom." Dr. Vigen's letter stated that J.M. can be untruthful and was capable of fabricating allegations of abuse in order to stop visitation with his mother. According to the interviewer from Gingerbread House, J.M. *1203 appeared to have been coached in making his allegations. The medical evidence shows that whatever trauma the child may have incurred was very minor. These factors cast doubt upon the allegations raised in this matter that the mother was sleeping in the child's bed and struck him on two occasions. The record supports the juvenile court decision to deny Mr. Malant's request to hold Ms. Brooks in contempt.[2]

CONCLUSION
For the reasons stated above, we affirm the judgment of the trial court denying the rule to show cause and the amended rule to show cause filed by Ted Malant, urging that Robin Brooks be held in contempt of court. Costs in this court are assessed to Ted Malant.
AFFIRMED.
NOTES
[1] Mr. Malant argues many factors which are not in the record and were not before the juvenile court. Accordingly, those factors are not properly before this court for consideration.
[2] Mr. Malant urges that the facts of this case are very similar to those in Arrington v. Campbell, XXXX-XXXX (La.App. 3d Cir.3/9/05), 898 So.2d 611, in which the third circuit found that the lower court failed to consider the best interest of the child. In Arrington v. Campbell, supra, there was significant proof of physical and sexual abuse of the child by the mother and her family. The third circuit awarded sole custody to the father and ordered that the mother have supervised visitation. Contrary to Mr. Malant's argument, we find that the present case is more similar to S.J. v. S.M., 550 So.2d 918 (La.App. 2d Cir. 1989), writ denied, 552 So.2d 398 (La.1989). In S.J. v. S.M., this court maintained sole custody of the child with the mother, finding that there was insufficient evidence to establish that the child had been the victim of sexual abuse and denying the father's request that the child undergo further medical evaluation.